298 So.2d 177 (1974)
PHOENIX INSURANCE COMPANY, Appellant,
v.
Henry Eugene HELTON, Appellee.
No. T-307.
District Court of Appeal of Florida, First District.
July 18, 1974.
Rehearing Denied August 19, 1974.
*178 Robert P. Gaines, of Beggs, Lane, Daniel, Gaines & Davis, Pensacola, for appellant.
Charles L. Cetti, of Phillips, Williams, McGraw, Cetti & O'Brien, Pensacola, for appellee.
BOYER, Judge.
The principles hereinafter announced will be more easily understood if we first chronologically deraign the facts.
For brevity the appellant will be referred to as "Phoenix", the appellee as "Helton" and the insured tort-feasor (James Mason Bracklin) as "Bracklin".
Sometime before the occurrence of the events giving rise to this controversy Phoenix issued an automobile liability insurance policy to Bracklin, which policy contained an exclusion which provided that the policy would not apply "to bodily injury or property damage caused intentionally by or at the direction of the insured."
In December of 1967 Helton, who had known Bracklin for many years, saw Mr. and Mrs. Bracklin at an establishment known as Sy's Place. Helton was accompanied by a woman named Dina Morris. Helton, a professional bondsman, was at Sy's Place for the purpose of attempting to arrest a woman for whom he had made bond. He apparently found the woman, who threw a drink in his face and then ran out the door. Dina Morris ran out after her. Apparently as a result of mistaken identity, Dina Morris became engaged in a fight with Mrs. Bracklin, who was not the woman who had thrown the drink in the face of Helton. A group of people gathered around the struggling women. Bracklin attempted to reach his wife to extricate her from the melee but was "grabbed from behind" by two unidentified men. He then went to his car for the purpose of using it as an instrument of access. Helton's hand was injured when he struck the headlight of the car. At the risk of rendering this opinion unusually lengthy, we will, in order to focus upon the points here involved, quote all of the testimony adduced at the trial relative to the use of the vehicle by Bracklin and the manner in which Helton sustained his injury.
Helton's testimony was as follows:
"Q. What happened during the hairpulling out there in the parking lot?
"A. Well, we was, you know trying to separate them, and the car came through there, and I pushed the boy out of the way and my hand went in the headlight and got it broken.

*179 * * * * * *
"Q. And you were hit there in the mob at the time Mr. Bracklin drove up in his car and ran into the group?
"A. Well, I guess you could say that.
"Q. And in the process you got your hand bumped by the headlight of his car?
"A. Well, I guess so. You can say that. I got it broke in four or five places.
* * * * * *
"Q. All right, with reference to the movement of the automobile, was it headed into the crowd or around the crowd?
"A. Well, I would say that Mr. Bracklin was, you know, probably trying to 
* * * * * *
"Q. Just as to the movements of the automobile, Mr. Helton.
"A. I would say he was trying to get, you know, around the 
* * * * * *
"Q. Just what did the automobile do?
"A. Well, he wasn't in the middle of the street. In other words, when he  we were, you know, in the middle of the street and he came down the street. I pushed Mr. Welch out of the way and, in doing so, my hand went in the headlight."
Mr. Bracklin testified as follows:
"Q. Then what happened?
"A. I went back to the front door of the place, and James Helton was coming out of the door then, I hollered at him to help me break it up. I didn't know who it was fighting over there with my wife, and I don't know if he knew either. But, it seemed like I just couldn't get any help, so I just got in my car and started to try to get her and leave, and I couldn't get to her.
* * * * * *
"Q. And you went and got your automobile to come back and get your wife, didn't you?
"A. Yes sir.
"Q. And you drove up right into the crowd in order to get your wife, didn't you?
"A. No, I didn't drive into the crowd.
"Q. Well, how would you describe how you drove your car then?
"A. I came around the corner of the building, and I passed pretty close to them. I didn't see Mr. Helton at the time  I don't know where he was. I still didn't know who the woman was fighting. I didn't find that out until later.
"Q. Mr. Bracklin, you knew when  well, you knew Mr. Helton hurt his hand that night, didn't you?
"A. No sir.
* * * * * *
"Q. Do you remember telling Mr. Harper at that time that you got your car to try to scatter out the crowd so you could get your wife and leave?
"A. I told him I drove pretty close to the crowd, but I didn't drive into them. I think he asked me that question, and I told him I didn't drive into them, I drove close to them."
An insurance adjuster, James A. Harper, testified that he had taken a statement from Bracklin and that the statement contained the following:
"The car was sitting right behind me at Sy's, so I got in my car and drove around the corner and right near the crowd. Ray Welch was hit when I went through the crowd and knocked down. I turned around in the parking lot behind the building and started back through the crowd  or near the crowd and two men ran across the road in front of me; *180 neither of them was hit. The crowd was still there all milled around the fight, and I just drove on off. As far as Gene Helton getting hit, I didn't see him get hit, and I don't know how he got his hand hurt."
Mr. Harper further testified that in response to the question "Did you go back through the middle of the crowd, or did you go around the edge of the crowd or what? Mr. Bracklin replied
"To the edge of the crowd. I didn't try to go through the middle of the crowd. My wife was in the middle of the crowd, and I just wanted to scare some of them away from there so I could get her out of the middle of that crowd."
Helton sued Bracklin and obtained judgment by default. Thereafter Helton caused to be served upon Phoenix a writ of garnishment. Phoenix responded that the injuries sustained by Helton were caused intentionally by Bracklin and that therefore there was no coverage afforded by Phoenix's policy. The case went to trial on those issues.
The jury returned a verdict in favor of Helton and against the garnishee, Phoenix. In subsequent proceedings, the court granted Helton's motion for award of attorney's fees against Phoenix, and entered a judgment against Phoenix for attorney's fees in the sum of $4,000.00.
This appeal followed. We will consider the points raised in the order presented.
Phoenix contends that the evidence demonstrated that as a matter of law the injury to Helton was caused intentionally by Bracklin and that therefore the exclusionary provision of the policy is applicable. Phoenix further contends that the trial court erred in charging the jury as follows:
"The court instructs you that injury or damage is caused intentionally within the meaning of an intentional injury exclusion clause if the insured has acted with the specific intent to cause harm to a third party.
"An insurer will not be relieved of its obligation under a policy containing an intentional injury exclusion clause unless the insured has acted with the specific intent to cause harm to a third party."
and that the court further erred in refusing to give the following instruction requested by Phoenix:
"In determining whether any injury was caused intentionally, you are instructed that the law presumes that a person intends the natural consequences of his act. Therefore, if you find that James Mason Bracklin intentionally drove his automobile into or so close to a group of persons that as a normal consequence of the act it was probable that someone would be injured, you should conclude that the act and therefore the injury was intentional."
First we observe that the evidence adduced before the jury as to the manner in which the injury occurred, all of which is hereinabove quoted, was simply insufficient, even if every bit of it was believed by the jury, to sustain the defense based upon the exclusionary provision in the policy. In short, the evidence is insufficient to establish that Helton's injury was "caused intentionally by or at the direction of the insured." At best the evidence establishes negligence. (We see no need to discuss Helton's contribution to that negligence.)
However, had the evidence been sufficient to sustain appellant's contention that Bracklin intentionally drove into the crowd, we would nevertheless be required to affirm on the authority of Cloud v. Shelby Mutual Ins. Co. of Shelby, Ohio, Fla.App. (3d) 1971, 248 So.2d 217 and Gulf Life Insurance Company v. Nash, Sup.Ct. Fla. 1957, 97 So.2d 4.
Appellant urges that if the act by which the injury is caused is intentional *181 then the injury is intentional. Were we to follow that theory to its logical conclusion then there could never be a recovery for injuries sustained in an automobile collision because the driver of the offending automobile would unquestionably always have been intentionally driving same; therefore the act of driving being intentional the resulting injury would be intentional (under appellant's theory) and would therefore fall under the exclusionary provision of the policy. Such a contention was rejected by the Supreme Court of Florida in Gulf Life Insurance Company v. Nash, supra, wherein the court stated:
"The principle of law is firmly imbedded in the jurisprudence of this State that contracts of insurance should be construed most favorably to the insured. To draw such a fine distinction between the words `accident' and `accidental means' would do violence to this principle. It is a classic example of a distinction without a difference. As a practical matter, the average person buying accident insurance policies assumes that he is covered for any fortuitous and undesigned injury. The average man has no conception of the judicial niceties of the problem and even the most learned judge or lawyer, in attempting to understand and comprehend the niceties of the distinction, is left in a state of bewilderment and confusion." (97 So.2d at page 10)
A very similar factual situation was considered by our sister court of the Third District in Cloud v. Shelby Mutual Ins. Co. of Shelby, Ohio, supra. In the case sub judice the evidence reflects that the insured intentionally drove his vehicle around and close to the crowd, including the injured party, for the purpose of dispersing them so that he might reach his entangled wife. In the Cloud case the insured impatiently and intentionally sought to push out of his way a car blocking him in a driveway, thereby injuring an occupant. In that case the same issues were presented as sub judice. We now adopt the reasoning of our sister court as follows:
"In recent years several courts have dealt with insurance policy exclusions similar to that in the instant case. The majority of courts have ruled that coverage is not excluded as a matter of law where there was an `intentional act' but not an `intentionally caused' injury. `Anno., liability insurance: specific exclusion of liability for injury intentionally caused by insured,' 2 A.L.R.3d 1238 (1965). The rule has been stated in 44 AmJur.2d `Insurance,' § 1411, p. 259 as follows:
`The courts have generally held that injury or damage is `"caused intentionally"' within the meaning of an `"intentional injury exclusion clause"' if the insured has acted with the specific intent to cause harm to a third party, with the result that the insurer will not be relieved of its obligations under a liability policy containing such an exclusion unless the insured has acted with such specific intent.'
"We have carefully examined the two lines of cases representing the majority rule and the minority rule. Cf. Eisenman v. Hornberger, 438 Pa. 46, 264 A.2d 673 (1970) with Wigginton v. Lumberman's Mutual Casualty Co., 169 So.2d 170 (La. 1st Ct.App. 1964). We express the view that the majority rule quoted above represents the better rule and we adopt it as governing the instant case. "The appellee insurance company's contentions as to the public policy against obtaining insurance protecting against the insured's own intentional acts have been systematically rejected in the cases cited in the annotation at 2 A.L.R.3d 1238 (1965). We also reject the argument that the rule is that a `tortfeasor intends the natural and probable consequences of his act' in construing the instant exclusionary provision. This court denied that `reasonably foreseeable consequences' rule has any application to accident *182 insurance policies. Harvey v. St. Paul Western Insurance Companies, Fla.App. 1964, 166 So.2d 822; see also Gulf Life Insurance Company v. Nash, Fla. 1957, 97 So.2d 4." (248 So.2d at page 218)
We next consider appellant's contention that the court erred in requiring Phoenix to pay attorney's fees for Helton's attorneys, Bracklin being the named insured.
The statutory basis for the award of attorney's fees is Florida Statute § 627.428, F.S.A., the material portion of which is as follows:
"(1) Upon the rendition of a judgment or decree by any of the courts of this state against an insurer and in favor of an insured or the named beneficiary under a policy or contract executed by the insurer, the trial court, or, in the event of an appeal in which the insured or beneficiary prevails, the appellate court, shall adjudge or decree against the insurer and in favor of the insured or beneficiary a reasonable sum as fees or compensation for the insured's or beneficiary's attorney prosecuting the suit in which the recovery is had."
In Queen v. Travelers Insurance Company, Fla.App. (3d) 1972, 258 So.2d 35, our sister court, the Third District held, under a similar factual situation, that the garnishor judgment holder was entitled to assessment of attorney's fees pursuant to the above quoted statute, reasoning that the judgment holder in the garnishment action against the insurance company was in fact enforcing the policy holder's rights under the policy.
Subsequent to the last mentioned case the Second District, in Wilder v. Wright, Fla.App. (2d) 1972, 269 So.2d 434, held that where a successful plaintiff in a tort action against the insured and the insurance carrier recovered a judgment against both, and where the question of liability coverage was not an issue, attorney's fees were not recoverable pursuant to the statute by the plaintiff from the carrier. The District Court specifically reserved ruling on the issue of attorney's fees in cases where coverage is a factor, saying:
"The question of whether or not the provisions of the statute would be applicable in a separate action to determine coverage is not before this Court, and we make no ruling thereon." (269 So.2d at page 436)
On certiorari, the Supreme Court (Wilder v. Wright, Sup.Ct.Fla. 1973, 278 So.2d 1) approved the decision of the District Court, the Supreme Court emphasizing the words in the statute "named beneficiary under a policy." The Court further said:
"Likewise, the attorney fee provision of § 627.428 was not intended to benefit the party injured by the insured automobile, * * *." (278 So.2d at page 3)
Wilder v. Wright did not involve a garnishment action.
In December of 1972, subsequent to Queen v. Travelers Insurance Company, supra, the Third District decided Daleo v. Bert & Bette Bayfront 66 Marine, Fla. App. (3d) 1972, 273 So.2d 113, a case wherein an injured plaintiff sued the alleged tort feasor and its insurance carrier. The carrier successfully invoked in the trial court an exclusionary provision in its policy, thus making coverage an issue. The District Court reversed and directed the trial court, in the event the plaintiff should ultimately prevail, to award attorney's fees for services incident to the appeal and trial "dealing with the issue of coverage under the insurance policy."
In a per curiam opinion, the Supreme Court of Florida in Daleo v. Travelers Indemnity Company, Sup.Ct.Fla. 1973, 282 So.2d 169, reversed the District Court and remanded "for reconsideration in light of Wilder v. Wright, 278 So.2d 1 (Fla. 1973)."
*183 As above observed the District Court in Wilder v. Wright specifically pointed out that coverage was not an issue before the court. The Supreme Court in that case emphasized that the statute provided attorney's fees when the judgment against the insurer was in favor of the insured or the named beneficiary under the policy.
Inasmuch as the Daleo case was decided on a coverage issue it appears to follow that the reversal thereof by the Supreme Court, citing Wilder v. Wright, indicates that the Supreme Court disapproves of fees awarded pursuant to the statute in favor of any party other than the insured or the named beneficiary under the policy, whether coverage is an issue or not. Further, although the Queen and Huerta cases are not mentioned in any of the other cases above cited it appears from a careful reading of those cases that the Supreme Court in the Wilder case and Daleo case disapproved the rationale of the Queen and Huerta cases.
Clearly the claimant in the case sub judice, Helton, was neither the insured nor named beneficiary under Phoenix's policy. Following therefore Wilder v. Wright, supra, and Daleo v. Bert & Bette Bayfront 66 Marine, supra, we hold that Helton was not entitled to have his attorney's fees assessed against Phoenix, the appellant, and in that regard the judgment below is reversed.
Bringing our holding into clear focus, so far as attorney's fees are concerned, we hold that a garnishor judgment holder who is neither the insured nor the named beneficiary under the policy, may not recover attorney's fees from the carrier garnishee under Florida Statute 627.428, F.S.A., incident to a garnishment action against the carrier.
Appellee's motion for attorney's fees incident to this appeal is denied.
Affirmed in part and reversed in part.
RAWLS, C.J., and McCORD, J., concur.