323 So.2d 605 (1975)
EMPLOYERS COMMERCIAL UNION INSURANCE COMPANY OF AMERICA, Appellant,
v.
Charles A. KOTTMEIER, M.D., Appellee.
No. 75-948.
District Court of Appeal of Florida, Second District.
December 19, 1975.
*606 William E. Hennen and William Duane Wood, III, of Bradham, Lyle, Skipper & Cramer, St. Petersburg, for appellant.
Joseph W. Gaynor, of Jacobs, Robbins & Gaynor, P.A., St. Petersburg, for appellee.
GRIMES, Judge.
This appeal involves a question of liability insurance coverage in a suit for slander.
Dr. J. Martin Klein brought suit against Dr. Charles A. Kottmeier and his liability insurance carrier, Employers Commercial Union Insurance Company of America (Employers Commercial), alleging that Dr. Kottmeier had made numerous slanderous remarks impugning Dr. Klien's professional reputation as a physician and anesthesiologist. Count I of the second amended complaint contained a prayer for compensatory damages, Count II sought punitive damages and Count III was a claim for compensatory and punitive damages based upon a theory that the alleged statements constituted a malicious and intentional interference with Dr. Klein's professional relationships with surgeons and other personnel at Morton Plant Hospital. A motion to dismiss filed by Employers Commercial was granted as to Counts II and III but denied as to Count I.
Employers Commercial then filed its answer denying that Dr. Kottmeier was insured for the claims contained in Count I. Thereupon, Dr. Kottmeier filed a cross-claim against Employers Commercial seeking specific performance and a declaratory judgment to the effect that he was covered under the policy and that Employers Commercial had a duty to provide him a defense to Dr. Klein's suit. Ultimately the court entered an order on the cross-claim which specified that Employers Commercial had a duty to provide coverage and a defense to Dr. Kottmeier with respect to Count I of Dr. Klein's complaint. Employers Commercial has filed an interlocutory appeal from that order which we construe to be a partial summary judgment on liability.
The pertinent portions of the Employers Commercial policy read as follows:
"1. COVERAGE
(a) PERSONAL LIABILITY
The company agrees to pay on behalf of the Insured the ultimate net loss in excess of the retained limit which the Insured shall become legally obligated to pay as damages because of personal injury or property damage caused by an occurrence.
* * * * * *
C. DEFINITIONS
* * * * * *
9. `Personal Injury' means:
* * * * * *
(c) the publication or utterance of a libel or slander or other defamatory or disparaging material, or a publication or utterance in violation of an individual's right of privacy, except that maliciously published or uttered by, at the direction of, or with the consent of the Insured, ..."
It has been said that "malice, either actual or imputed, [is] the gist of every actionable libel." Layne v. Tribune Co., 1933, 108 Fla. 177, 146 So. 234. Therefore, Employers Commercial contends that the provisions of C.9.(c) preclude coverage even though Count I of Dr. Klein's complaint does not contain allegations of malice. If this be true, paragraph C.9.(c) would be meaningless with respect to defamatory statements by the insured because it would provide coverage for libel and slander and yet take it away in the same breath. We think a more logical interpretation of this provision is that there is coverage for all libel or slander by the insured, except that which is published or uttered *607 with actual malice. In other words, even though the defamatory words may carry with them a presumption of legal malice, coverage is still provided unless it be shown that the statements were made with actual malice.
Employers Commercial's reliance upon paragraph B.6. of the policy which excludes coverage for "any act committed by or at the direction of the Insured with intent to cause personal injury" is misplaced. The Florida courts follow the rule that even though the act which causes an injury was intentionally done, liability coverage will not be excluded under an intentional injury exclusion clause unless the insured acted with the specific intent to cause the injury. Phoenix Insurance Company v. Helton, Fla.App.1st, 1974, 298 So.2d 177; Cloud v. Shelby Mutual Ins. Co. of Shelby, Ohio, Fla.App.3d, 1971, 248 So.2d 217. Thus, in Cloud liability coverage was held to exist where a personal injury resulted from the insured impatiently seeking to push out of his way a car blocking him in the driveway. Even though the act of pushing was intentional, the insured did not intend to inflict the injury. By the same token, a statement may be intentionally uttered which is ultimately determined to be slanderous, but if the statement was not made with the specific intent to harm the slandered party, liability coverage would not be eliminated by the intentional injury exclusion clause. Paragraph B.6. is actually consistent with our construction of paragraph C.9.(c). In essence, a slanderous statement is covered by the policy unless the statement was made with the specific intent to harm which is equivalent to actual malice.
The last contention of Employers Commercial is that the initial pleadings reflect actual malice because in a reply to Dr. Kottmeier's answer, Dr. Klein alleged that the disparaging statements described in the second amended complaint "were not made in good faith or with good motives, but were made with malice." The way this came about was that one of Dr. Kottmeier's affirmative defenses was that any statements he may have made concerning Dr. Klein were qualifiedly privileged. This would be a good defense to a statement otherwise slanderous unless it be shown that the statement is made with actual malice. Loeb v. Geronemus, Fla. 1953, 66 So.2d 241; see W. Prosser, Law of Torts, § 110 (3d ed. 1964). Therefore, it was natural that Dr. Klein would file a reply in which he asserted that the statements were made with malice (presumably actual malice). This would not have prevented Dr. Klein from obtaining a judgment by showing that Dr. Kottmeier had made slanderous statements even without proof of actual malice, providing that Dr. Kottmeier was unable to sustain his defense of qualified privilege. Thus, even if the reply is considered to be an initial pleading, the pleadings, taken as a whole, still included a cause of action for slander not uttered with actual malice. Cf. St. Paul F. & M. Ins. Co. v. card, Merrill, Cullis & Timm, Fla.App.2d, 1967, 196 So.2d 219. This is what the Employers Commercial policy was intended to cover. Likewise, so long as one count of the complaint against Dr. Kottmeier was within the scope of liability coverage, Employers Commercial also had the duty to defend, at least until such time as the covered portion of the claim was eliminated from the suit. C.A. Fielland, Inc. v. Fidelity & Cas. Co. of New York, Fla.App.2d 1974, 297 So.2d 122.
In the order entered below, the court said that Employers Commercial had a duty to provide coverage under Count I of Dr. Klein's complaint. If this was a final determination of coverage for Dr. Kottmeier's allegedly slanderous statements, it was premature because the case was not in a posture to decide whether any of the statements were made without actual malice. On the other hand, the court may have only been saying that Count I of Dr. Klein's complaint stated a cause of action which was within the scope of liability *608 coverage provided to Dr. Kottmeier by the Employers Commercial policy. This was a proper interpretation of coverage at that point, and we will construe the order in that fashion because we are confident that the court will apply the principles set forth above in the ultimate determination of whether any statements made by Dr. Kottmeier which are held to be slanderous were within the coverage of the policy.
Affirmed.
HOBSON, Acting C.J., and BOARDMAN, J., concur.