500 So.2d 608 (1986)
Nicole N. ZORDAN, a Minor by and through Her Parents and Natural Guardians, Richard B. Zordan and Charmain Zordan, and Richard B. Zordan and Charmain Zordan, Individually, Appellants,
v.
Gerald "Bud" PAGE, South Carolina Insurance Company and Atlas Assurance Company of America, Appellees.
No. 85-2055.
District Court of Appeal of Florida, Second District.
December 19, 1986.
Rehearing Denied January 16, 1987.
Roy L. Glass, St. Petersburg, for appellants.
Gary W. Sawyer and Daniel F. Pilka of Haas, Boehm, Brown, Rigdon, Seacrest & Fischer, P.A., Tampa, for appellees.
LEHAN, Judge.
This is an appeal by the plaintiff from a summary judgment denying insurance coverage in a personal injury suit. The suit is against the insured and his two liability insurers for damages from the insured's alleged sexual fondling of a child. Presented to us and argued by the insurers and the plaintiff as the issue on appeal is whether a policy exclusion for intentional injuries should be held to have applied so as to exclude insurance coverage for the insured's intentional injurious acts of sexual fondling if there is no evidence that the *609 insured subjectively intended injury other than evidence that he intended the acts. The trial court held that the exclusion would apply. We reverse and remand for further proceedings without deciding that issue.
The suit seeks damages for alleged emotional injuries caused by the insured's alleged sexual fondling of his stepgranddaughter who was age fourteen when the complaint was filed. The complaint alleges generally that the insured "did, on sundry occasions, handle, fondle, and touch ... [the child] in a lewd, lascivious, or indecent manner." Portions of the record separate from the complaint show that the claims include the insured at various times over a period of years having allegedly fondled the child by placing his hands under her clothing and touching and fondling her private parts. There appears to be no claim of either penetration or violence or threat thereof. The complaint alleges that injuries were not intended or expected by him. The answer denies that any fondling occurred. The insured's deposition denies that he ever touched her in an improper manner or ever intentionally hurt her.
The trial court's decision that there is no insurance coverage was reached on summary judgment. No findings or reasoning is contained in the summary judgment order. In support of their motion for summary judgment, the insurers cited language in the insurance policies providing that there would be no coverage for liability of the insured arising from injuries which were intended or expected by him.[1] They argued that that language should apply because the insured's intent to injure should be presumed from his intent to act.
The plaintiff argues that there is an unresolved fact issue as to whether the insured subjectively intended or expected the alleged injuries. It is argued that the complaint alleges that he did not, there is no evidence otherwise, and that in this insurance coverage context it is not presumed from the intent to act that there was intent to injure.
We agree that there are unresolved fact issues. The law, as explained below, requires a determination of the insured's subjective intent.
This appeal, it should be kept in mind, involves only the construction of the wording of insurance contracts drafted by insurers. The principle is established in Florida that "even though the act which causes an injury was intentionally done, liability coverage will not be excluded under an intentional injury exclusion clause unless the insured acted with the specific intent to cause the injury." Employers Commercial Union Insurance Company of America v. Kottmeier, 323 So.2d 605, 607 (Fla. 2d DCA 1975) (emphasis added). See Annotation: Construction and Application of Provision of Liability Insurance Policy Expressly Excluding Injuries Intended or Expected by Insured, 31 ALR 4th 957, 983-88. Specific intent is in contrast to general intent. While a person may have the general intent to injure someone from an act which he intended to commit because his general intent to cause the natural result of that act may be presumed whether or not he subjectively intended to inflict the injury, in general he may not be found to have had the specific intent to cause that result unless he can be found to have subjectively intended the result. See Linehan v. State, 442 So.2d 244, 247 (Fla. 2d DCA 1983), aff'd, 476 So.2d 1262 (Fla. 1985). The foregoing principle was also followed in this court's holding in Grange Mutual Casualty Co. v. Thomas, 301 So.2d 158 (Fla. 2d DCA 1974), that injuries which naturally and foreseeably flow from intended conduct by an insured are not for that reason "expected" and thus excluded from coverage by language in a policy similar to that in the policies in the case at hand. See also Greater Palm Beach Symphony Ass'n v. Hughes, 441 So.2d 1171 (Fla. 4th DCA 1983); Phoenix *610 Insurance Co. v. Helton, 298 So.2d 177 (Fla. 1st DCA 1974); Cloud v. Shelby Mutual Insurance Co., 248 So.2d 217 (Fla. 3d DCA 1971). This is the majority rule. Allstate Insurance Co. v. Steinemer, 723 F.2d 873, 875 (11th Cir.1984). Cf. Arkwright-Boston Manufacturers Mutual Insurance Co. v. Dunkel, 363 So.2d 190 (Fla. 3d DCA 1978), and George v. Stone, 260 So.2d 259 (Fla. 4th DCA 1972) (a tort-feasor's insanity at the time he inflicted injury may preclude application of a liability insurance policy provision excluding an intentionally caused injury).
At this stage of the proceeding there has been no determination of the subjective intent of the insured. Nor has there been any resolution of other factual issues relevant to determining the insured's intent, such as, what acts, if any, occurred, the nature and surrounding circumstances of the acts, and what injuries, if any, resulted. In fact, there is no testimony in the record other than some excerpts from the insured's deposition.
Plaintiff cites MacKinnon v. Hanover Insurance Co., 471 A.2d 1166 (N.H. 1984), in support of the argument that insurance coverage should not be excluded under the language of the policy because the insured's intent to injure should not be inferred simply from his intent to act. In MacKinnon the New Hampshire Supreme Court, rejecting contrary public policy arguments, held that an insurance policy exclusion of expected or intended injuries did not necessarily bar coverage for injuries from defendant's sexual molestation of a child. MacKinnon concluded that intent to injure cannot be inferred for such a purpose simply from intentional sexual molestation and from any reasoning that injury is nearly certain to arise therefrom. The rationale in that case was that "the policy language could have provided for this expressly, but did not." 471 A.2d at 1168. See also Powell v. New York Life Insurance Co., 120 So.2d 33, 35 (Fla. 2d DCA 1960) ("The right of an insurance company to restrict coverage through exceptions or limitations [for assault] is recognized by the courts.") There is the additional argument that if there were any doubt, it is well settled that doubtful insurance coverage questions must be resolved against the insurer. Stuyvesant Insurance Co. v. Butler, 314 So.2d 567, 570 (Fla. 1975).
As to the argument made on behalf of the insurers that an insurance company should not be expected to have anticipated and specifically provided for noncoverage of this type of reprehensible occurrence, it may be pointed out that there has been notice of the potential for this type of case if not from the established Florida law referred to above, from MacKinnon and earlier cases from other jurisdictions discussed below. Issue may also be taken with the proposition contained in the dissenting opinion in this case which, citing Allstate Insurance Co. v. Kim W., 206 Cal. Rptr. 609, 160 Cal. App.3d 326 (1984), seems to be that the fact that the legislature has denominated certain conduct directed at another person as criminal requires a judicial conclusion that compensable injury results therefrom. No Florida authority is cited for that proposition which would not seem consistent with Kottmeier and Thomas and with an underlying rationale behind the criminal law which, in contrast to that behind tort law, generally is to punish rather than to compensate individuals for damages. As MacKinnon says, "Public policy applicable to the criminal law does not automatically apply in a civil context... ." 471 A.2d at 1169.
The insurers cite cases in other jurisdictions involving liability insurance coverage for sexual acts directed against minors which contain language saying that the intent to inflict injury can be inferred from the intent to commit the acts. See Linebaugh v. Berdish, 376 N.W.2d 400 (Mich. App. 1985); Lehmann v. Metzger, 355 N.W.2d 425 (Minn. 1984), and other Minnesota cases cited therein; Kim; CNA Insurance Co. v. McGinnis, 666 S.W.2d 689 (Ark. 1984). In apparent contrast to the claimed facts of the case before us, those cases appear to have involved either penetration or violence or threat thereof. (In *611 MacKinnon the acts were described as "alleged acts of assault in the form of sexual abuse." 471 A.2d at 1167.) Linebaugh specifically noted that there had been sexual penetration in that case and limited the language of its holding to that circumstance. 376 N.W.2d at 405. In McGinnis the insured had had "sexual relations" with his stepdaughter almost daily from the time she was six years old until she was sixteen. 666 S.W.2d at 690. In Kim the insured admitted "assaulting and battering" a young girl and did not assert that he had had no intent to harm her. 206 Cal. Rptr. at 611, 614. The Lehmann opinion does not describe the "sexual assaults" against a twelve year old girl which were involved in that case. 355 N.W.2d at 426.
We are not taking issue with the holdings of the out of state cases cited by the insurers. Those cases seem to stand for the proposition that intentional sexual molestation which involves penetration or violence or fear thereof may be presumed to have caused intentional injury. They may be considered to be not inconsistent with Florida case law, such as, Hartford Fire Insurance Co. v. Spreen, 343 So.2d 649 (Fla. 3d DCA 1977), where a person striking another person with his fist in his eye causing a fracture of the eye was deemed to have intended injury and with Bosson v. Uderitz, 426 So.2d 1301, 1302 (Fla. 2d DCA 1983), where the intention to injure was inferred from acts committed against an elderly woman pursuant to a plan to steal her purse "by exerting whatever force was necessary." Spreen and Bosson are extensions of the principle expressed in Kottmeier and Thomas.
In its present posture the circumstances of this case may be similar to the circumstances in Fireman's Fund Insurance Co. v. Hill, 314 N.W.2d 834 (Minn. 1982), which is also cited by the insurers and which is relied upon in the dissenting opinion in this case for its presumption of intended and substantial injury. Although the types of sexual acts involved in Hill are not described, the court's reference to "sexual play," id., may indicate that the sordid facts of that case were like those which are claimed to exist here. Hill was the progenitor of Lehmann, also relied upon in the dissenting opinion. In Hill, the Minnesota court, finding intentional injury from sexual molestation of a minor, relied upon psychiatric testimony as to the insured having intended injury under the particular circumstances of that case. Also, the facts in Hill as to whether injury could be judicially assumed to have been intended were at least substantially stronger than the apparent facts in this case at this stage even if the claimed acts were to be assumed to have been committed. In that case the insured had been on specific notice of the harmfulness of his acts. He had been previously confronted by the welfare department with, and warned about, allegations of sexual assaults upon children which he knew the welfare department viewed as detrimental to children. 314 N.W.2d at 835.
It is not established how, if at all, this case does compare with Hill, where the Minnesota court relied upon evidence of subjectively intended injury. Nor is it established how this case might compare with the other out of state cases which concluded in situations apparently involving penetration or violence or threat thereof that intent to injure may be inferred from the intent to act. None of those cases appears to have decided an insurance coverage issue before the facts were established and while the insured denied under oath not only any intent to injure but the allegations that the acts occurred.
The apparent view of the dissenting opinion in this case that grave psychological injury necessarily results from any sexual child abuse is inconsistent with language in the recent opinion of the First District in Kokx v. State, 498 So.2d 534 (Fla. 1st DCA 1986) with which we agree. Kokx dealt with the validity of a trial court's reason for an upward departure from the sentencing guidelines following a conviction for aggravated child abuse. The reason had involved the victim being "apparently emotionally scarred from the incident, probably permanently." The First District, distinguishing *612 aggravated child abuse from sexual battery, said,
To say that emotional trauma is inherent in almost every sexual battery case is one thing, understanding that every sexual battery offense must, of necessity, involve the:
oral, anal, or vaginal penetration by, or union with, the sexual organ of another or the anal or vaginal penetration of another by any other object....
Section 794.011(1)(h), Florida Statutes. By contrast, examination of the aggravated child abuse statute and its necessary interplay with the aggravated battery statute reveals that one can engage in conduct which constitutes aggravated child abuse but which is, at least by comparison with sexual battery, relatively minor.
Distinguishing Lerma v. State, 497 So.2d 736 (1986), the First District went on to say in a footnote that
In Lerma ... the Court did not say that nearly all ... [sexual offenses] inflict emotional hardship on the victims. Rather, the holding appears to be limited to sexual battery cases, the more severe type of sexual offense. In other words, the Court in Lerma did not suggest that other sexual offenses of lesser severity than sexual battery necessarily inflict emotional hardship. Of course, the offense involved in the instant case, aggravated child abuse, is included in an entirely different category (Category 4) from that which includes sexual battery (Category 2).
Kokx held that the reason for the upward departure was valid because it was "supported by the facts which were before the trial court... ."
We hold that the insurance coverage issue should not be decided at this stage of the suit because the other factual issues referred to above have not been resolved. We find no basis to conclude as a matter of law that coverage is excluded.
We therefore reverse the summary judgment and remand for trial. Thereafter, there may be a ruling concerning insurance coverage. While it is the duty of the court to determine the extent of coverage, the trier of fact has the duty to determine whether the facts place the incident within that coverage. Drisdom v. Guarantee Trust Life Insurance Co., 371 So.2d 690 (Fla. 3d DCA 1979); State Farm Fire & Casualty Co. v. Lichtman, 227 So.2d 309 (Fla. 3d DCA 1969). What, if any inferences can be drawn from the facts should be determined only after all the facts are known, see Bosson; Spreen, which was the procedure also followed in Hill. This is especially appropriate when there is an established principle of law saying that the type of inference sought to be drawn from the alleged facts cannot generally be so drawn. See Kottmeier; Thomas. Compare Spreen; Bosson. Our reversal is, of course, without prejudice to further appeal by a party dissatisfied with the outcome.
On remand the trial court should additionally consider whether or not the attorney for the insurers may properly also represent the insured. We have in mind the questions of whether this case would have been presented to us in entirely the same light if the interests of the insured had been separately represented on this appeal and whether the interests of the insured and the insurers will be consistent at trial. We do not imply attorney misconduct, either past or contemplated.
We need not more directly address the remaining point on appeal which, as an additional ground for asserting that the summary judgment was improper, contends that the trial court erred in entering the summary judgment without having ruled on plaintiff's motion to compel production of the insured's psychotherapists' reports. Those reports are said to contain facts in opposition to the insurers' motion for summary judgment. A fair inference may be that plaintiff wanted to use those reports to support the contention that the insured did not have a specific intent to injure the child.
*613 We recognize that one may have a first, visceral reaction which is strongly adverse to any conclusion that a person who engages in sexual fondling of a child may be covered by liability insurance. Such a gut reaction may, understandably, arise from outrage at the alleged reprehensible acts which, in turn, would presumably be founded upon concern for the allegedly victimized child. While we are certainly not without outrage at activities like those alleged and claimed here, we would fail in our responsibilities if we permitted our judicial decision in an insurance coverage case to be controlled thereby. Nor would we fulfill our responsibilities if our decisions in personal injury suits generally were to be controlled simply by concern for the injured. Yet, a conclusion in this insurance coverage case that there may be insurance coverage as compensation for injuries inflicted by the insured which the premiums received by the insurers were paid to provide for would, however incidentally, be consistent with the interests of the child. That aspect is mentioned only to indicate a possible countervailing type of visceral reaction which, also incidentally, is not irrelevant to the dissenting opinion's expressed concern for acquiring funding to reconstruct the child's emotional status (and its contrasting view that insurance coverage should at this stage be denied).
Reversed and remanded for proceedings consistent herewith.
RYDER, A.C.J., concurs.
FRANK, J., dissents With Opinion.
FRANK, Judge, dissenting.
I respectfully dissent. The entry of a summary judgment was wholly warranted in spite of such authority as Employers Commercial Union Insurance Company of America v. Kottmeier, 323 So.2d 605 (Fla. 2d DCA 1975) and Grange Mutual Casualty Co. v. Thomas, 301 So.2d 158 (Fla. 2d DCA 1974). Our courts have been unwilling to extend the principle that one intends the natural and probable consequences of his act in the circumstance where an insurance policy, as in the present matter, excludes from coverage injuries which are specifically intended. See e.g. Phoenix Insurance Company v. Helton, 298 So.2d 177 (Fla. 1st DCA 1974); Cloud v. Shelby Mutual Insurance Co. of Shelby, Ohio, 248 So.2d 217 (Fla. 3d DCA 1971). The logic underlying rejection of the "reasonably foreseeable consequences" rule to insurance policies excluding intentional torts derives from the notion that injuries occur from a vast array of intentional acts but if such injuries were deemed foreseeable, they, too, would be intentional and hence there would be no coverage. I cannot embrace an unyielding adherence to this reasoning in the current setting. Precedent is instructive, but it is not imprisoning.
Acknowledging validity in the concern stemming from the consequences of applying the foreseeability test to commonplace torts such as automobile accidents, I am absolutely unwilling to deny the foreseeability of injury to a child who is subjected to sexual abuse. It defies human response and sensitivity to conclude that the inevitable product of the sexual molestation of a child is not intended. That conduct inescapably inspires some response in the minor victim. Whether the response is a precocious excitation of libido, an utter revulsion or simply confusion, the child suffers grave psychological injury. Indeed, the fact that the ultimate goal of this litigation is to acquire funding to reconstruct Nicole's emotional status is a testament to the soundness of my urging that we not accord slavish adherence to a principle that simply does not fit the context. The damage Nicole suffered flowed just as surely from Page's criminal acts as if he had taken his fist or a club and struck her in the face. The nature of Page's conduct "was such that an intention to inflict injury can be inferred as a matter of law." Fireman's Fund Ins. Co. v. Hill, 314 N.W.2d 834 (Minn. 1982). To the extent that the customary rule would bring the Zordans' claim within the policy, I part company with that rule in a matter of this kind and would follow the rule adopted in a number of states exemplified by the Minnesota Supreme Court's view: "In construing the `intentional act' exclusion of liability insurance *614 policies where the underlying claim is that the insured intentionally sexually assaulted the victim, an intention to inflict injury will be inferred as a matter of law." Estate of Lehmann By Lehmann v. Metzger, 355 N.W.2d 425, 426 (Minn. 1984).
To claim, as is pleaded by the Zordans, that Page's acts were committed without an intention to harm is incredible. Florida's criminal code protects children from and punishes for the very specie of acts committed by Page, and implicit in the statutory scheme is the recognition that some form of harm inheres in and inevitably flows from the proscribed behavior.[1]See Allstate Ins. Co. v. Kim W., 206 Cal. Rptr. 609, 160 Cal. App.3d 326 (1984). Obviously the allegation is designed simply to avoid the policies' exclusionary language. In my judgment, however, "[t]he test is what a plain ordinary person would expect and intend to result from a mature man's deliberately debauching" his seven year old stepgranddaughter for many years. See CNA Ins. Co. v. McGinnis, 666 S.W.2d 689 (Ark. 1984). I find the disclaimer meaningless in determining the correctness of the summary judgment.
Accordingly, I would affirm the trial court.
NOTES
[1] We find no merit in plaintiffs' argument to the effect that one of the policies did not actually so provide.
[1] The sexual abuse of a child is comprehensively dealt with as a crime in Chapters 782, 784, 787, 794, 796, 800, 827, 847 and 900 of Florida Statutes (1985).