**ALLSTATE INSURANCE COMPANY, Plaintiff,**

v.

**Helen THOMAS, individually and as Mother and next friend of Marie Thomas, a minor; Greater Mount Carmel Church, Inc.; and Frank McClarety, Defendants.**

**No. CIV–87–522–B.**

United States District Court, W.D. Oklahoma.

April 27, 1988.

George Davis, McKinney, Stringer & Webster, Oklahoma City, Okl., for plaintiff.

Floyd W. Taylor, Miskovsky, Sullivan, Taylor & Manchester, David D. Wilson, Angela D. Ailles, Kim Taylor, Oklahoma City, Okl., for defendants.

## MEMORANDUM OPINION GRANTING SUMMARY JUDGMENT

BOHANON, District Judge.

The central controversy in this declaratory judgment action is whether the Deluxe Homeowner's Policy issued by the plaintiff provides coverage for damages occurring when the insured, Frank McClarety, allegedly molested Marie Thomas at the Greater Mount Carmel Church.

Frank McClarety was convicted on January 14, 1985, of intentionally touching and molesting a child under the age of sixteen in a lewd and lascivious manner in violation of 21 O.S. § 1123.

The criminal charge accused McClarety of sexually molesting the child at the church's daycare center where McClarety was a bus driver/maintenance man and Thomas was a pupil. The abuse allegedly occurred over a four year period from November, 1980—May, 1984. McClarety was sentenced on January 31, 1985, to eighteen months imprisonment.

Marie and Helen Thomas filed a state civil suit against the church and McClarety on April 29, 1985. The daycare center's insurer, State Farm Insurance Company, represents both defendants in the state court action. State Farm (in the name of Mr. McClarety) eventually demanded that Allstate defend and indemnify McClarety under the terms of his homeowner's policy.

Allstate then instituted this action in federal court seeking a declaratory judgment that child molestation is not an activity for which McClarety can be indemnified. Allstate has filed a motion for summary judgment.

The parties have submitted numerous briefs and authorities discussing whether Allstate is obligated to defend and indemnify McClarety in the state court case. The court also heard oral argument on the motion. After careful study, the court is now prepared to rule on the motion for summary judgment.

The undisputed facts are that Allstate issued a Deluxe Homeowner's Policy to McClarety, covering his residence at 3939 N.W. 36th Street. The homeowner's policy was in full force and effect during the time the alleged molestation occurred at the Mt. Carmel Daycare Center. The policy contains the following insuring agreement: "We will pay all sums arising from the same loss which an insured person becomes legally obligated to pay as damages because of bodily injury or property damage covered by this part of the policy." (Policy, p. 17). The following exclusions were set out in the policy:

1. We do not cover bodily injury or property damage intentionally caused by an insured person.

2. We do not cover bodily injury or property damage occurring on any premises, other than an insured premises, owned, co-owned, rented or controlled by an insured person. (Policy, pp. 17–18)

While McClarety continues to assert his innocence, he was convicted under 21 O.S. § 1123 of intentionally touching and molesting a child under the age of 16 in a lewd and lascivious manner. The state civil petition alleges that McClarety's actions were "willful, wanton, malicious, gross, outrageous, intentional and unlawful."

The plaintiff asks the court to find that child molestation is an intentional act and inherently harmful as a matter of law.

## I.

The allegations in the state complaint filed by Helen and Marie Thomas will de-

termine the extent of Allstate's duty to defend McClarety.

The general rule is that the insurer must defend the insured if the allegations even arguably come within the terms of the policy. *Detroit Edison Co. v. Michigan Mutual Ins. Co.*, 102 Mich.App. 136, 141, 301 N.W.2d 832 (1980). "There is no duty on the part of the insurer to defend when it is established by the insurer that the facts are such that there is no coverage under the policy for any resulting liability." *State Farm Fire and Cas. Co. v. Williams*, 355 N.W.2d 421, 424-25 (Minn. 1984).

## II.

In order for an intentional act exclusion to result in a denial of coverage in Oklahoma, two elements must be shown: (1) the insured must have intended to commit the act and (2) the insured must intend to commit the injury or harm which resulted. *Lumbermens Mutual Ins. Co. v. Blackburn*, 477 P.2d 62 (Okl.1970). Although the defendants argue that McClarety's actual intent should be decided by a jury, the courts of six states have ruled in very similar cases [1] that an allegation of child molestation satisfies these two elements as a matter of law.

Of the seven jurisdictions which have considered the position urged here by Allstate, all but one have found sexual abuse to be inherently harmful and denied coverage under intentional act exclusions. The question is one of first impression in Oklahoma.

Minnesota first inferred an intent to inflict injury in *Fireman's Fund Ins. Co. v. Hill*, 314 N.W.2d 834, 835 (Minn.1982), a case involving a man who molested a foster child. The rule was upheld two years later when the court considered a sexual attack on a physically disabled adult. *State Farm Fire and Casualty Co. v. Williams*, 355 N.W.2d 421 (Minn.1984). In *Illinois Farm-*

ers Ins. Co. v. Judith G., 379 N.W.2d 638 (Minn.App.1986), the court considered coverage for a babysitter who repeatedly molested two girls left in his care. The male babysitter argued that his young age rendered him unable to comprehend that his actions would injure the girls. Recalling that the insured's lack of subjective intent was stipulated in *Williams*, the court determined that "subjective statements do not preclude this court from inferring an intent to injure or to damage *from the nature of the acts involved*—unconsented [sic] sexual contact with a minor." *Judith G.*, 379 N.W.2d at 642.

Washington, in an incest case, adopted the rule that "intent to injure, while normally a subjective determination under the wording of the policy, should be inferred to the insured in sex abuse cases." *Rodriquez v. Williams*, 107 Wash.2d 381, 729 P.2d 627, 630 (1986).

Michigan, when faced with a disc jockey who repeatedly raped a fourteen-year-old girl, questioned whether some acts are so certain to cause harm that intent to injure may be found as a matter of law. The Court of Appeals of Michigan held that sexual penetration of a child was an act from which an intent to injure can be inferred. *Linebaugh v. Berdish*, 144 Mich. App. 750, 376 N.W.2d 400, 405 (1985).

Arkansas' Supreme Court inferred an intent to injure in a stepfather's sexual abuse of his stepdaughter. *CNA Ins. Co. v. McGinnis*, 282 Ark. 90, 666 S.W.2d 689 (1984). The court's reasoning was succinct: "to claim that he did not expect or intend to cause injury, flies in the face of all reason, common sense and experience." *Id.* 666 S.W.2d at 691.

California has also inferred harm in a child molestation case. In *Allstate Ins. Co. v. Kim W.*, 160 Cal.App.3d 326, 206 Cal. Rptr. 609, 613 (1984), the court found that an intent to injure is inherent in the nature of the act.

Here, however, the focus is on the nature of the act committed. The court finds the reasoning of those cases is still persuasive despite minor variations in policy language.

---

1. The court has carefully considered that some of these cases involve policy language examining what was "expected or intended" by the insured. Differing policy language often clearly distinguishes results reached in different cases.

New Hampshire, in an opinion which failed to mention an earlier inapposite case, found that psychological injury was inherent in the sexual abuse of an eleven-year-old boy. *Vermont Mut. Ins. Co. v. Malcolm*, 128 N.H. 521, 517 A.2d 800 (1986). *But see MacKinnon v. Hanover Ins. Co.*, 124 N.H. 456, 471 A.2d 1166 (1984).

### III.

Florida is the only state which, when presented with the opportunity to do so, failed to adopt the rule urged by Allstate. *Zordan v. Page*, 500 So.2d 608 (Fla.Dist.Ct. App.1986), dealt with Gerald "Bud" Page, an insured who had sexually fondled his fourteen-year-old stepdaughter, Nicole. Over a period of several years, the stepfather placed his hands underneath her clothing and fondled her private parts. The court's decision to reject the rule previously adopted in other states centered on the absence of a claim of penetration or threatened violence. *Id.* at 610–611.[2]

Relying on *Kokx v. State*, 498 So.2d 534 (Fla.Dist.Ct.App.1986), *disapproved, Barrentine v. State*, 521 So.2d 1093, (Fla. 1988),[3] the court held that serious psychological injury does not necessarily result from all child molestation. *Id.* at 611. The language quoted from *Kokx* by the *Zordan* court acknowledged the existence of "relatively minor" acts of molestation and concluded that whole classes of sexual offenses do not necessarily "inflict emotional hardship on the victims." *Id.* Judging the prolonged sexual fondling of the stepdaughter to one of those relatively minor cases, the court refused to grant summary judgment. *Id.* at 612.

Judge Frank filed a stinging dissent which stated in part:

I am absolutely unwilling to deny the foreseeability of injury to a child who is subjected to sexual abuse. It defies human response and sensitivity to conclude that the inevitable product of the sexual molestation of a child is not intended. That conduct inescapably inspires some response in the minor victim. Whether the response is a precocious excitation of libido, an utter revulsion or simply confusion, the child suffers grave psychological injury. Indeed, the fact that the ultimate goal of this litigation is to acquire funding to reconstruct Nicole's emotional status is a testament to the soundness of my urging that we not accord slavish adherence to a principle that simply does not fit the context. The damage Nicole suffered flowed just as surely from Page's criminal acts as if he had taken his fist or a club and struck her in the face. The nature of Page's conduct "was such that an intention to inflict injury can be inferred as a matter of law." *Fireman's Fund Ins. Co. v. Hill*, 314 N.W.2d 834 (Minn.1982)

*Zordan*, 500 So.2d at 613 (Frank, J., dissenting).

### IV.

Common sense and legislative history lead this court to conclude that Oklahoma would not accept Florida's distinction that harm may be inferred only where penetration or threats of violence accompany a sexual assault on a child. Obviously, rape or torture greatly intensifies the trauma of a sexual attack; however, molestation and fondling are far from being non-violent acts. Hugging, kissing, or simply touching a child becomes an act of emotional, if not physical, violence when such touching is used for the sexual gratification of an adult. "The night and day distinction between acts of compassion and those motivated by wanton salacity is one which the

**2.** The court acknowledged that in cases of violence or penetration, Florida would also infer an intent to harm and deny coverage. *Id.* at 611.

**3.** The Supreme Court of Florida in *Barrentine* recognized a split in their Courts of Appeals. The First District Court of Appeals in *Kokx* and *Barrentine v. State*, 504 So.2d 533 (Fla.Dist.Ct. App.1987) distinguished crimes of sexual battery involving penetration or violence from crimes of lewd and lascivious conduct. The Second District Court of Appeals in *Connell v. State*, 502 So.2d 1272 (Fla.Dist.Ct.App.1987) focused on emotional injury, treating sexual offenses equally. The Florida Supreme Court explicitly rejected the analysis used in *Kokx v. State*, thereby weakening the *Zordan* decision's persuasiveness in the case at bar.

reasonable person could not confuse." *Whaley v. State*, 556 P.2d 1063, 1064 (Okl. Cr.1976).

The Oklahoma Legislature clearly recognized the harm which results from all types of sexual abuse when it enacted 21 O.S. § 1123 prohibiting lewd or indecent proposals or acts involving children. As society has become more aware of the devastating emotional and psychological scars left by such abuse, the Legislature has broadened the scope of the Act and increased the penalties for violations.

From the time of its enactment to the present, Section 1123 has addressed three types of lewd acts: (1) making indecent sexual propositions to children; (2) looking at or touching a child in a sexual manner; and (3) persuading a child to go to a secluded place for the purpose of engaging in sexual activities. In 1945, these actions were misdemeanors punishable by up to 1 year in jail and/or a fine of $500. The offenses became felonies in 1947 and the option of 1–5 years imprisonment at the penitentiary was added. In 1951, the Legislature changed the language which restricted the act to male perpetrators and female victims, making the act applicable to adults and children of both sexes. A 1955 amendment increased the maximum punishment to 5–20 years in the penitentiary. In 1965 the age of a potential perpetrator was broadened from "adult" to any male over sixteen years of age and any female over eighteen years of age.[4] An amendment in 1981 made the act applicable to any adult over eighteen years of age. Finally, in 1983, the Legislature raised the age limits of victims from fourteen to sixteen years of age. *See* 21 O.S.A. § 1123 (1988) (Historical Note).

The Legislature's continued refinement of § 1123, the seriousness of the penalties provided for committing these crimes, and the recent expansion of protection to victims up to age sixteen all evidence the state's concern with the harm inherent in acts of child molestation, whether or not such assaults involve penetration.

### Conclusion

Oklahoma's treatment of child molestation convinces the court that Oklahoma would infer an intent to inflict harm to a child when an adult intentionally commits an act of sexual abuse. The state court complaint alleges that Mr. McClarety did commit intentional acts of molestation. The nature of the alleged acts compels the court to infer that he also intended to cause the inevitable harm which Marie Thomas is now suffering. Accordingly, his actions fall within the intentional acts exclusion of his homeowners policy and Allstate has no duty to defend or indemnify him in the state court action. The motion for summary judgment is granted.

Because the court holds that coverage is denied under the intention acts exclusion, the court does not address whether coverage would also be denied under the insured premises exclusion.

---

**4.** The 1965 amendment also inserted a requirement that the accused be at least five years older than the victim. Amendments passed in 1983 shortened this age difference requirement to three years.