ALLSTATE INSURANCE, Plaintiff,

v.

William CRUSE, Jr., et al., Defendants.

ALLSTATE INSURANCE, Plaintiff,

v.

William CRUSE, Jr., et al., Defendants.

Nos. 87-1005-Civ-Orl-19,
89-432-Civ-Orl-19.

United States District Court,
M.D. Florida,
Orlando Division.

Dec. 1, 1989.

Robert T. Burger, Burger & Ville, Indian Harbour Beach, Fla., for Sandra Jeanne Thompson.

E. James Schmick, Coral Gables, Fla., Ronald C. Willis, Ormond Beach, Fla., for Benjamin and Dorene Pelliccio.

Edward A. Perse, Horton, Perse & Ginsberg, Miami, Fla., Jennings L. Hurt, III, Rissman, Weisberg, Barrett & Hurt, P.A., Orlando, Fla., Roger D. Helms, Troutman, Williams, Irvin, Green & Troutman, Winter Park, Fla., for Eric J. Messbauer, Donna Gallo, David W. Fox, Benjamin and Dorene Pelliccio, Judith C. Watson, Marian C., Calvin and Antonio Amos, Judith A. Larson, Faisal Al-Mutairi and Najib Abdul-Samad.

Debra K. Wilkinson, David B. Shelton, Lori J. Caldwell, Randall H. Nunn, Rumberger, Kirk, Caldwell, Cabaniss, Burke & Wechsler, Orlando, Fla., for Allstate Ins. Co.

O. John Alpizar, Law Offices of O. John Alpizar, P.A., Palm Bay, Fla., for Donna Gallo and Helen Norvell.

James H. Nance, Nance, Cacciatore & Sisserson, Melbourne, Fla., for Eric J. Messbauer, Donna Gallo, Elsie B. McGuinn, Milton Fox, Judith C. Watson, Marian C., Calvin and Antonio Amos, Judith A. Larson and Faisal Al–Mutairi.

George W. Maxwell, III, High, Stack, Lazenby, Palahach, Maxwell and Williams, Melbourne, Fla., for John R. Rich, IV, John R. Rich, III, David Michael Rich and Helen Rich.

## ORDER

FAWSETT, District Judge.

This case comes before the Court on the following matters in the above referenced cases:

■ 1. Plaintiff's Agreed Motion for Leave to File Third Amended Complaint filed in Case No. 87–1005–Civ–Orl–19 (Doc. No. 176, filed June 26, 1989).

Plaintiff asserts in its Agreed Motion for Leave to File Third Amended Complaint (Doc. No. 176, filed June 26, 1989), that the Third Amended Complaint merely excludes allegations regarding late notice which it had raised in its earlier Complaints. Plaintiff also asserts that all the counsel that it had been able to reach have consented to this Motion, and the parties have agreed that Defendants' Answers filed in response to the Second Amended Complaint may be applicable to the Third Amended Complaint if they desire.[1] Because the Third Amended Complaint raises no new issues but merely serves as a device to simplify the issues for trial, this Motion is *GRANTED.* The Third Amended Complaint is considered filed as of the date of this Order.

2. Plaintiff's Motion for Summary Judgment and Memorandum in Support thereof filed in Case No. 87–1005–Civ–Orl–19 (Doc. No. 85, filed March 8, 1989), Plaintiff's Notice of Filing Deposition of Judith Larson in Support of Plaintiff's Motion for Summary Judgment (Doc. No. 86, filed March 8, 1989), Defendants Grogan and Johnson's Memorandum in Opposition to Plaintiff's Motion for Summary Judgment (Doc. No. 90, filed March 16, 1989), Defendant Fox, Gallo, Messbauer, Watson, A. Amos, M. Amos, Al–Mutairi, & Abdul–Samad's Memorandum in Opposition to Plaintiff's Motion for Summary Judgment (Doc. No. 95, filed March 20, 1989), Defendant Norvell's Memorandum in Opposition to Plaintiff's Motion for Summary Judgment (Doc. No. 100, filed March 22, 1989), Plaintiff's Memorandum In Opposition to Defendants' Request for Stay or Abatement (Doc. No. 102, filed March 30, 1989); Plaintiff's Motion for Summary Judgment Against Defendant Judith Larson (Doc. No. 136, filed May 24, 1989), Plaintiff's Motion for Summary Judgment against Defendants Grogan, Johnson, and Watson (Doc. No. 136, filed May 24, 1989), Plaintiff's Motion for Summary Judgment against Defendant Norvell, Abdul–Samad, Amos, and Pelliccio (Doc. No. 138, filed May 24, 1989), Plaintiff's Motion for Summary Judgment against Defendants Messbauer, Al–Mutairi, Gallo and Fox (Doc. No. 139, filed May 24, 1989), Plaintiff's Motion for Summary Judgment against Defendants Rich, III, Rich IV, and Rich (Doc. No. 140, filed May 24, 1989), Plaintiff's Notice of Filing Exhibits in Support of its Motion for Summary Judgment (Doc. No. 141, filed April 24, 1989), Plaintiff's Notice of Filing Cases Cited in Allstate's Motion for Summary Judgment (Doc. No. 146, filed May 24, 1989), Memorandum of Defendants Grogan and Johnson's in Opposition to Allstate's Motions for Summary Judgment (Doc. No. 161, filed June 12, 1989), Defendant Norvell's Memorandum in Opposition to Allstate's Motions for Summary Judgment (Doc. No. 162, filed June 12, 1989), Defendants Fox, Gallo, Messbauer, Watson, M. Amos, A. Amos, Larson, Al–Mutairi, and Abdul–Samad's Memorandum in Opposition to Allstate's Motions for Summary Judgment (Doc. No. 163, filed June 12, 1989), Defendants' Notice of Filing Cases Cited in Defendants' Motions for Summary Judgment (June 13, 1989), Defendants' Notice of filing Affidavit In Opposition to Allstate's Motions for Summary Judgment (Doc. No. 164, filed June 14, 1989), Memorandum of Defendants Rich, IV, Rich III, and Rich in

---

1. Plaintiff was unable to reach two defense attorneys to discuss this matter. No brief in opposition to Plaintiff's Motion was filed as required by Local Rule 3.01(b).

Opposition to Plaintiff's Motions for Summary Judgment (Doc. No. 167, filed June 19, 1989), and Cases cited in Opposition to Plaintiff's Motion for Summary Judgment (Doc. No. 168, filed June 19, 1989), Defendant Pelliccio's Memorandum in Opposition to Plaintiff's Motions for Summary Judgment (Doc. No. 169, filed June 19, 1989), Defendant Norvell's Notice of Intent to Rely on Affidavit of Dr. Walter Afield in Opposition to Allstate's Motions for Summary Judgment (Doc. No. 170, filed June 20, 1989), Defendants' Notice of Intent to Rely on Affidavit of Dr. Walter Afield in Opposition to Plaintiff's Motions for Summary Judgment (Doc. No. 172, filed June 23, 1989), Defendants Grogan and Johnson's Notice of Intent to Rely on Affidavit of Dr. Walter Afield in Opposition to Plaintiff's Motions for Summary Judgment (Doc. No. 175, filed June 26, 1989), Plaintiff's Reply Memorandum in Support of Its Motions for Summary Judgment (Doc. No. 203, filed August 23, 1989), Defendant Cruse's Memorandum in Opposition to Plaintiff's Motion for Summary Judgment (Doc. No. 215, filed September 26, 1989), and Plaintiff's Notice of Filing Regarding Motions for Summary Judgment (Doc. No. 216, filed September 26, 1989), Plaintiff's Notice of Filing Regarding Motions for Summary Judgment (Doc. No. 216, filed September 26, 1989).

## I. BACKGROUND

On April 23, 1987, William Cruse shot several individuals, both outside his home and in two different shopping areas in Palm Bay, Florida. He allegedly wounded some victims, killed others, and took hostages.

Allstate Insurance Company ("Allstate") insured Mr. Cruse under a Deluxe Homeowner's Policy on the date in question.[2] As a result of Mr. Cruse's conduct on this day, Defendants are seeking damages for their personal injuries from Mr. Cruse as Plaintiffs in Florida state courts. Plaintiffs in three state lawsuits assert that Mr. Cruse shot and killed their decedents. In ten state lawsuits, Plaintiffs complain that Mr. Cruse shot and wounded them. In the last action, Plaintiff claims that Mr. Cruse held her hostage.

In a separate criminal action Defendant Cruse was convicted of these crimes on April 5, 1989. A Motion for a New Trial was filed on April 25, 1989. This Motion was denied on July 10, 1989. Appeals are still pending.

In the instant action Plaintiff Allstate seeks a declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C.A. § 2201 (West Supp.1989), concerning whether Mr. Cruse's Deluxe Homeowner's Policy provides coverage for his conduct on April 23, 1987. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(1).

The relevant sections of the policy at issue are as follows:

Coverage Y: Guest Medical Protection:
Losses we cover:

Allstate will pay all sums arising from an accidental loss which an insured person becomes legally obligated to pay as damages because of bodily injury or property damage covered by this part of the policy.

Each person who sustains bodily injury is entitled to this protection when that person is:

2. Off the insured premises, if the bodily injury:

b) is caused by the activities of an insured person or a residence employee; . . .

Losses We Do Not Cover:

1. We do not cover any bodily injury which may reasonably be expected to result from the intentional or criminal acts of an insured person or which are in fact intended by an insured person.

Exhibit A to Third Amended Complaint, at pp. 23 & 25.

## II. SUMMARY JUDGMENT

Preliminarily, summary judgment is appropriate only where there are no genuine issues as to any material fact and where the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c). The party who moves for summary judg-

---

**2.** Policy Number O 61 154672 03/01, Form AU 9601.

ment bears this exacting burden. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 156, 90 S.Ct. 1598, 1607, 26 L.Ed.2d 142 (1970). If there are any factual issues, the Court must deny the motion and proceed to trial. *Environmental Defense Fund v. Marsh*, 651 F.2d 983, 991 (5th Cir.1981).

Plaintiff argues two main issues in its motions for summary judgment. First, it claims that coverage is excluded under the policy because the injuries and deaths that resulted from Mr. Cruse's actions on this day were not accidents within the parameters of the policy. Second, it argues that there is no coverage as a result of the specific provision which excludes coverage for "bodily injuries which may reasonably be expected to result from the intentional or criminal acts of the insured."

Defendants respond that (1) there is coverage under the policy because the events of April 23, 1987 were accidents from the victims' viewpoint and (2) the actions of Mr. Cruse were not intentional or criminal because Defendant Cruse's temporary insanity at the time in question prevented him from forming the specific intent to harm the victims. According to Defendants, the jury verdict of guilty as to Mr. Cruse in the state court criminal trial is irrelevant because that determination is inadmissible in this action by virtue of the doctrine of collateral estoppel.

■ It is not disputed that Mr. Cruse is responsible for the injuries that the victims sustained. Defendants have described Mr. Cruse's actions in the following manner in interrogatories filed in either this case or the state court actions [3]:

I was shooting baskets in our driveway when Mr. Cruse drove up and leveled a shotgun at me. I tried to run away but he shot me in the back. There was nothing I could do to prevent the shooting. I laid there while Mr. Cruse shot at the vehicle in which my father and brother were in.

Interrogatory of John Rich, at p. 3.

My employer, Mr. Brock and myself were in his vehicle driving in front of the Winn–Dixie. We had seen the man

shooting when he was in the Publix parking lot. We had driven to the Winn–Dixie to get away from him and he took the same path as we. He shot at us and the bullets penetrated the car, one of them hitting me in the side.

Interrogatory of Donna Gallo, at p. 3.

I was working at Winn–Dixie that evening. I was out in front of the store getting carts when I saw a man shooting a gun outside of the Publix across the street. When I went back in the store, I told the girl at the front desk, and she and some other people went to the window to look out. He then came over to our parking lot and began shooting in the windows. I took off to the back, telling people to get down. I told them to get to the back fire exits. When I got out, I stopped with three other people that work at Winn–Dixie to see if they were all right. Then someone said that he was coming and all four of us started running toward some houses. We headed toward the ditch about halfway to the houses. The man fired and missed one of my co-workers by about a foot. He fired again and he hit me in my right arm. I was in shock after that. Someone in a truck pulled up and put me in the back. Cruse shot at the truck, because I remember hearing the bullets hit the truck. They took us to 84 Lumber, where I was loaded into an ambulance.

Interrogatory of David Fox, at pp. 3 & 9.

I was grocery shopping in Winn–Dixie at Sabal Palm Shopping Center when I heard someone say there was a man with a gun outside. I ran into the ladies' room to hide when the shooting began and stayed there hiding in the stall for hours when he came into the ladies' room and told me to get out before he blasted me out. When I finally had the courage to get out of the stall he pointed his rifle in my stomach, and I pleaded with him not to shoot me. He said he was tired of the harassment he has gotten in this town and was very concerned that I was a police officer. I convinced him that I

**3.** These answers are admissible in this action. *Holt v. Southern Railway Co.*, 51 F.R.D. 296, 300

(E.D.Tenn.1969); *Continental Casualty Co. v. United States*, 308 F.2d 846, 849 (5th Cir.1962).

was not a police officer and asked him to let us go. He said he needed one of us (Ms. Brown or myself). He then said I could walk out as long as I told the police to turn off the lights in the store. I said I would and as I walked from the back of the store to the front, he kept his rifle pointed at my back. I know because I kept looking back to see if he was following me.

Interrogatory of Judith Larson, at pp. 3 & 7.

According to Mr. Cruse,

"[i]f we take this definition of an accidental loss as an undesigned and unexpected event, there is no doubt a genuine issue of material fact as to whether the events that occurred on April 23, 1987 were accidental losses. There is clearly a genuine issue as to whether Mr. Cruse designed his course of action on that day. There is certainly a question of fact as to whether Mr. Cruse expected or intended the acts on that day.

Defendant Cruse's Memorandum of Law in Opposition to Allstate's Motion for Summary Judgment (Doc. No. 215, filed September 26, 1989, at p. 2). The other Defendants all assert that there is a genuine question of material fact as to whether Mr. Cruse was sane at the time of the events in question.

Upon careful consideration, this Court grants summary judgment in favor of Plaintiff because the Court finds as a matter of law that the bodily injuries which were the result of Mr. Cruse's conduct on April 23, 1987, were not accidents covered by the homeowner's policy. The Court further finds that there is no coverage under the policy because it was reasonable to expect bodily injury from Mr. Cruse's actions, be they intentional or criminal, irrespective of whether Mr. Cruse was insane at the time in question.

4. Some courts have found even accidental discharges of guns to be outside the parameters of the policy. *Allstate Ins. Co. v. Cannon*, 644 F.Supp. 31 (E.D.Mich.1986) (observing that while wounding may have been accidental, discharge of the rifle was not), *Gulf Ins. Co. v.*

*Coverage for Accidental Losses*

■ The policy at issue here indemnified Mr. Cruse for sums arising from the accidental losses which he becomes legally obligated to pay. An accident has been "variously defined as an unusual and unexpected event, happening without negligence, an undesigned, sudden and unexpected event from a known cause." *Christ v. Progressive Fire Insurance Co.*, 101 So.2d 821, 822 (Fla. 2d DCA 1988). In construing whether a certain result is accidental, it is customary to look at the incident from the insured's point of view. Appleman, *Insurance Law and Practice*, § 360, at 452.53 (1981). *See also Hardware Mutual Casualty Co. v. Gerrits*, 65 So.2d 69 (Fla.1953) (holding that insured's construction of a building on his property which encroached on the property of another landowner was not an accident because the insured had deliberately and designedly located the building on the adjoining property); *Draffen v. Allstate Ins. Co.*, 407 So.2d 1063 (Fla. 2d DCA 1981) (concluding that victims' injuries were not accidental losses when the insured, after robbing three women at gunpoint, fired a gun six times in the direction of pursuers/victims); *West Building Materials v. Allstate Ins. Co.*, 363 So.2d 398 (Fla. 1st DCA 1978) (holding that exclusion under insurance policy for damage which is "either expected or intended" by insured barred coverage for fire damage allegedly caused by detonation of smoke bomb by insured's son).

■ Defendants do not assert that on the date in question the insured, Mr. Cruse, discharged the gun accidentally.[4] Relying primarily upon *Government Employees Ins. Co. v. Novak*, 453 So.2d 1116 (Fla. 1984), Defendants assert that the injuries and deaths were accidents because from the victims' viewpoint the injuries were the result of unusual and unexpected events which happened without the victims' negligence. In *Novak*, the insured was shot

*Lloyd*, 651 F.Supp. 518 (S.D.Miss.1986) (insured's killing of assailant was not covered under homeowner's policy where insured intended to draw the gun which killed assailant even if he did not intend to kill the assailant).

and killed by a stranger after she refused to give the stranger a ride. The Court determined that from the perspective of the deceased victim, who was also the insured, the event of being shot in the face by a pedestrian while she drove her car was a completely unexpected and unusual occurrence, producing a highly unfortunate result. Therefore, the killing was an accident, and it was covered under the policy at issue.

*Novak* does not compel the conclusion that Defendants in this case advocate. The fact that in *Novak* the Court determined that the incident was an accident is not inconsistent with a finding in this case that the events in question were not accidents. The Court in *Novak* said, "[t]o the extent that the attack on Ms. Novak was an intentional act of the attacker, it can reasonably be said that it was not an "accident." *Id.* at 1118. Because the insured is the attacker in this case, the facts in *Novak* are distinguishable from the instant case.

Defendants also rely on *Fowler v. State Farm*, 14 FLW 1006, (Fla. 1st DCA 1989), in which the insured shot and killed a third party whose estate then brought a claim against State Farm under the insured's accident policy. The Court in *Fowler* initially found that this was an accident covered by the insurer even though the victim was not the insured, because from the victim's point of view, the incident was an accident. Defendants' reliance on this case is misplaced, however, because this opinion was subsequently withdrawn, and an opinion which did not reach this issue was substituted. 548 So.2d 830 (Fla. 1st DCA 1989).

This Court therefore concludes that the bodily injuries suffered by the victims are not the result of a series of accidents covered by the policy because it is the perspective of the insured and not the perspective of the victim which determines whether an occurrence is an accident covered by the insurance policy.

### The Intentional Acts Exclusion

■ Plaintiff also asserts that coverage is excluded because the policy does not cover "bodily injury which may reasonably be expected to result from the intentional or criminal acts of an insured person ...",

and it was reasonable to expect bodily injuries from Mr. Cruse's intentional actions, *i.e.*, taking his gun, aiming it at strangers, pulling the trigger numerous times, and taking hostages. Plaintiff asserts that whether Mr. Cruse was sane at the time of these events is irrelevant because the language in the instant policy requires an objective standard rather than a subjective standard.

Defendants assert that the intentional acts exclusion is inapplicable in this case because a subjective test is required, and Mr. Cruse's temporary insanity at the time of the events in question prevented him from forming the specific intent to harm the victims. *E.g., Arkwright–Boston Manufacturers Mutual Ins. Co. v. Dunkel*, 363 So.2d 190 (Fla. 3rd DCA 1978) (finding that intentional acts exclusion did not exclude coverage for injuries which were caused by insane insured); *Employers Commercial Union Ins. Co. of Am v. Kottmeier*, 323 So.2d 605, 607 (Fla. 2d DCA 1975) (requiring in slander case that insured act with specific intent to cause injury in order to deny coverage under intentional injury clause); *George v. Stone*, 260 So.2d 259 (Fla. 4th DCA 1972) (finding intentional injury exclusion inapplicable because injuries caused by insane insured cannot be considered to have been caused intentionally). These Courts determined that an exclusion for "any act committed by or at the direction of the Insured with intent to cause personal injury" or for a "bodily injury ... caused intentionally or feloniously by or at the direction of the insured" required the insured to have acted with specific intent to harm in order to be covered by the exclusion.

The language at issue in the instant case has been interpreted to require an objective standard. *See, e.g., Allstate Ins. Co. v. Travers*, 703 F.Supp. 911 (N.D.Fla.1988) (determining in sexual molestation case that the same intentional acts exclusion as exists in the instant case requires an objective test); *Allstate Ins. Co. v. S.L.*, 704 F.Supp. 1059 (S.D.Fla.1989) (holding in sexual molestation case involving same intentional acts language as in the instant case that subjective intent to harm was irrele-

vant in determining coverage). *But see Allstate Ins. Co. v. McCranie,* 716 F.Supp. 1440, 1446 (S.D.Fla.1989) (finding no coverage in sexual molestation case under same intentional acts exclusion, but noting without addressing the differences in various clauses that Florida's lower courts have required in non-sexual molestation cases that the insured act with specific subjective intent to cause injury or harm to a third party in order for exclusion for intentional injuries to defeat coverage).

Defendants also rely on *Zordan v. Page,* 500 So.2d 608 (Fla. 2d DCA 1987), in which the trial court's granting of the insurer's Motion for Summary Judgment was reversed because material questions of fact existed concerning whether the insured had the specific intent to injure the minor when he allegedly molested the child. Defendants assert that Mr. Cruse also did not have the specific intent to harm the victims because he was suffering from temporary insanity at the time of the events in question.

In *Landis v. Allstate,* 546 So.2d 1051 (1989), the Florida Supreme Court recently rejected the *Zordan* approach in another sexual molestation case and determined that the intentional acts exclusion[5] does not require specific intent to harm. The Florida Court cited with approval Judge Frank's dissent in the *Zordan* case that "some form of harm inheres in and inevitably flows from the proscribed behavior."[6] The Court explained that:

> To state that a child molester intends anything but harm and long term emotional anguish to the child defies logic. The petitioners argue that [the insured's] diminished mental capacity prevented her from forming any specific intent to harm the children. Nonetheless, we believe that specific intent to commit harm is not required by the intentional acts exclu-

sion. Rather, all intentional acts are properly excluded by the express language of the homeowner's policy.

*Landis v. Allstate Ins. Co.,* 546 So.2d at 1053.[7]

The *Landis* case is analogous to the instant case. First, *Landis* did not limit its application to sexual molestation cases. As discussed earlier the Court rejected *without limitation* the necessity of requiring specific intent to commit harm. *Landis,* at 1053. This Court also finds the reasoning of Judge Frank in his dissent in *Zordan* persuasive in the instant case:

> Acknowledging validity in the concern stemming from the consequences of applying the foreseeability test to commonplace torts such as automobile accidents, I am absolutely unwilling to deny the foreseeability of injury to a child who is subjected to sexual abuse. It defies human response and sensitivity to conclude that the inevitable product of sexual molestation of a child is not intended. That conduct inescapably inspires some response in a minor victim. Whether the response is a precocious excitation of libido, an utter revulsion or simply confusion, the child suffers grave psychological injury. Indeed, the fact that the ultimate goal of this litigation is to acquire funding to reconstruct the victim's emotional status is a testament to the soundness of my urging that we not accord slavish adherence to a principle that simply does not fit the context. The damage [the victim] suffered flowed just as surely from [the molester's] criminal acts as if he had taken his fist or a club and struck her in the face. The nature of the molester's conduct "was such that an intention to inflict injury can be inferred as a matter of law."

*Zordan v. Page,* 500 So.2d 608, 613 (Fla. 2d DCA 1986) (citation omitted).

---

5. The exclusion at issue in *Landis* denied coverage for any "bodily injury intentionally caused by an insured person." *Landis v. Allstate Ins. Co.,* 516 So.2d 305, 306 (Fla. 3d DCA 1987), *aff'd,* 546 So.2d 1051 (1989).

6. *Landis* also undermines the viability of earlier cases where coverage was not barred under the intentional acts exclusion when the insured was insane.

7. Defendants also rely upon *Novak* which states that:

> the fact that Endicott [the attacker] was legally declared to be not responsible for his actions severely undermines the conclusion that Ms. Novak's injuries were purely the result of an intentional act.

In light of *Landis,* and the language of the instant clause, the above dicta is not compelling.

Second, assuming *arguendo* that Mr. Cruse was insane at the time of the events at issue here and that he did not form a specific intent to injure the victims, it still cannot be said that there is coverage under the policy. Mr. Cruse stated that:

I think what I had in mind was to scare them, to demonstrate, to make, make a little demonstration. To show them that I meant business, I, I would say. And I, an, uh, I just lost control I suppose. And I don't remember a heck of a lot about it.[8]

In the instant case Mr. Cruse unquestionably took his gun, pointed it at numerous strangers and pressed the trigger. He also took hostages. Mr. Cruse's admission that he wanted to scare the victims indicates that he intended some harm to them. The fact that the harm may have been greater than he intended does not warrant coverage under the policy. *Hartford Fire Ins. Co. v. Spreen*, 343 So.2d 649, 651 (Fla. 3rd DCA 1977) (finding that there was no insurance coverage for man who intentionally struck another man in face with fist, causing severe injury but intending to do only minor harm).[9] The damage the victims suffered flowed just as surely from Mr. Cruse's actions in this case as the actions of the molester in *Zordan* and *Landis*.

This Court must evaluate a motion for summary judgment in the light most favorable to the adverse parties. In this light, Mr. Cruse's admission that he started the events in question with the desire to scare people compels this Court to conclude that, as in *Landis* and *Zordan*, it is inevitable for some type of harm to flow from the behavior at issue here, *i.e.*, trying to scare strangers by pointing a gun at them in a threatening manner. This Court further finds that the intentional acts exclusion at issue in this case requires the Court to apply an objective standard to Mr. Cruse's

intentional acts. Therefore, based on these findings, the Court finds that the intentional acts exclusion in this case bars coverage under the policy.

### Criminal Act Exclusion

■ Based on the above findings, this Court need not reach the issue of whether coverage is denied based on the alleged criminality of Mr. Cruse's actions. The Court notes, however, that Defendants' argument that the doctrine of collateral estoppel bars consideration of the criminal proceedings is undermined by the recent case of *Zeidwig v. Ward*, 548 So.2d 209 (Fla.1989). In *Zeidwig*, a defendant who had unsuccessfully advanced an ineffective assistance claim in a post conviction proceeding attempted to litigate the same issue in a malpractice claim against his attorney. The Florida Supreme Court held that identity or mutuality of parties or their privies is not a prerequisite in Florida to the defensive application of the doctrine of collateral estoppel from the criminal to the civil context and barred the defendant from relitigating the issue. This Court is nevertheless reluctant to hold that Mr. Cruse's behavior was criminal when appeals concerning this issue are ongoing, and therefore the Court does not reach this issue.

3. As a result of the Court's disposition of Plaintiff's Motions for Summary Judgment in 87–1005–Civ–Orl–19, all remaining motions filed in Case No. 87–1005–Civ–Orl–19 prior to the date of this Order are deemed moot and are therefore *DENIED*.

4. Plaintiff's Motions to Consolidate in Case No. 87–1005–Civ–Orl–19 (Doc. No. 204, filed September 6, 1989), and in Case No. 89–432–Civ–Orl–19 (Doc. No. 14, filed September 6, 1989). No Opposition has been filed by Defendants in either case. Plaintiff files its Motions pursuant to Federal Rule of Civil Procedure 42(a)[10] which allows consolidation of cases involving com-

---

8. Defendant Mr. Cruse's Memorandum of Law in Opposition to Allstate's Motion for Summary Judgment (Doc. No. 215) Exh. A, at 17. Mr. Cruse also stated that he must have been temporarily insane at the time in question. *Id.*

9. *But see United States Fidelity & Guaranty Co. v. Perez*, 384 So.2d 904, 905 (Fla. 3rd DCA 1980) (finding coverage without explaining facts be-

cause the Court concluded that it was properly inferable that insured only intended to frighten decedent when she fired gun and accidentally, recklessly and through culpable negligence killed decedent).

10. Rule 42(a) provides that:
When actions involving a common question of law or fact are pending before the court, it

mon questions of law or fact when consolidation would avoid unnecessary cost and delay. Plaintiff asserts that Case No. 89–432–Civ–Orl–19 involves identical issues of law and fact as Case No. 87–1005–Civ–Orl–19 and that consolidating the two cases would save the Court the time of trying two identical cases separately. The latter case arises from the same events which form the basis of the original action. The Court therefore determines that the issues in both cases are identical and that consolidation of the two cases is appropriate. Plaintiff's Motions to Consolidate are *GRANTED*.

5. Plaintiff in Case No. 89–432–Civ–Orl–19 has filed two Agreed Motions for Leave to File Amended Complaints (Doc. Nos 10 and 13, filed July 21, 1989 and August 29, 1989 respectively). The latter Motion, Doc. No. 13, is hereby *GRANTED*. The First Agreed Motion to File Amended Complaint is *DENIED* as moot.

6. Plaintiff has filed Motions for Summary Judgment in Case No. 89–432–Civ–Orl–19. (Doc. Nos. 15 and 17, both filed on September 6, 1989). The parties are hereby notified that the Court will take the

may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings

Motions for Summary Judgment under advisement on December 18, 1989, at 5:00 p.m. Until that date, the parties may file affidavits and other documents within the purview of Federal Rule of Civil Procedure 56 in support of, or in opposition to, the motions. Failure to oppose the motions for summary judgment may result in judgment for respondents without further proceedings. *See Milburn v. United States*, 734 F.2d 762 (11th Cir.1984). A hearing will not be held on the motions.

### III. CONCLUSION

This Court hereby *GRANTS* Plaintiff's Motions for Summary Judgment in accordance with this Order against all Defendants in Case No. 87–1005–Civ–Orl–19. All other Motions in this case are *DENIED* as moot.

The Court will take under advisement Plaintiff's Motions in Case No. 89–432–Civ–Orl–19 for Summary Judgment on December 18, 1989.

DONE AND ORDERED.

therein as may tend to avoid unnecessary costs or delay.