641 So.2d 916 (1994)
Willie BROWN, Appellant/Cross-Appellee,
v.
The TRAVELERS INSURANCE COMPANY, Appellee/Cross-Appellant.
Nos. 92-3149, 93-0923.
District Court of Appeal of Florida, Fourth District.
July 27, 1994.
Rehearing, Rehearing and Clarification Denied September 16, 1994.
Basil E. Dalack of Saylor & Gwynn, West Palm Beach, for appellant/cross-appellee.
Hinda Klein of Conroy, Simberg & Lewis, P.A., Hollywood, for appellee/cross-appellant.
Rehearing, Rehearing En Banc and Clarification Denied September 16, 1994.
FARMER, Judge.
This appeal brings us the question whether a homeowner's fire insurance carrier may avoid coverage under an intentional acts exclusion for a fire loss caused by an insane insured. We hold under fairly old precedent from this court that the carrier may not so avoid coverage and that a more recent supreme court decision has not overruled our own.
The facts are straightforward and uncomplicated. It was undisputed that the insured himself set his own house on fire. His rage was sparked by his belief that his sister was plotting to steal his property. He was arrested, charged with arson, and upon being found initially incompetent was placed in a mental health institution. After a time, he was found fit to stand trial and released. A *917 jury found him not guilty by reason of insanity on the criminal charges.
A few days after the blaze, Travelers was given notice of the loss and began processing a claim. While the insured was in the mental health facility, Travelers corresponded with him numerous times requesting that he complete its standard proof of loss and claim forms and that he submit to an oral examination under oath. After his release from the institution, he voluntarily appeared with counsel at a scheduled examination but refused to answer questions, asserting his fifth amendment privilege against self incrimination while the criminal charges were still pending.
Later he filed the present action seeking a declaratory judgment on the coverage question. In the first count of the complaint he sought a declaration that he was insane when he set the fire and that the delay in providing proof of loss caused by his condition did not adversely affect his right to recover for the losses from the fire. In the second count, he sought a protective order against an oral examination regarding the nature and origins of the fire, to the extent that answers to questions on these subjects could incriminate him in the then pending criminal case.
This case was tried to a jury. At the close of the evidence, Travelers moved for a directed verdict on the basis that, even if the insured were found to be insane on the evening in question, the resulting loss from his conduct could not be considered accidental under Florida law. The court reserved ruling on that motion. The jury was given a special interrogatory verdict that asked: (1) whether the insured was insane when he set the fire; and (2) whether the insured failed to comply with the material terms of the policy resulting in prejudice to Travelers. The jury answered the first question "Yes," and the second question "No."
Travelers filed a post trial motion for new trial and for judgment on its prior motion for directed verdict, arguing three grounds: (A) that the finding of insanity was not supported by evidence; (B) that the losses were the result of the insured's intentional acts; and (C) that the evidence established that the insured had failed to comply with conditions precedent to recovery under the policy. The trial court granted the motion in part, concluding that the intentional acts exclusion precluded coverage for the fire loss. We disagree and reverse.
We begin, of course, with the text of the policy, for that is where any decision as to the rights and liabilities of the parties to an insurance contract must find its base. The policy is divided into two sections; section I provides "Property Insurance," and section II provides "Liability Insurance." Under section I, there are four separate coverages, entitled: "Coverage A  Dwelling", "Coverage B  Other Structures", "Coverage C  Personal Property", and "Coverage D  Additional Expenses".[1] Under section II, there are two separate coverages entitled "Coverage N  Personal Liability", and "Coverage O  Medical Payments".
There are two applicable insuring clauses under section I. The first pertinent provision states:
"Coverage A  Dwelling
"We cover the dwelling, including structures attached to the dwelling, on the insured premises. We also cover materials on or adjacent to the insured premises for use in building, altering or repairing the dwelling or other structures." [e.o.]
The second pertinent insuring clause states:
"Covered Perils

We cover the property described under Coverages A, B and C for direct loss caused by any of the following perils, subject to the exclusions on page 10:
1. fire and lightning." [e.o.]
*918 Beginning on page 10 there is the subheading, "Section I  General Exclusions", followed by a three-page listing of 18 expressed exclusions; there is no provision relating to intentional acts of the insured.
The insuring clause in section II states the following:
"Coverage N  Personal Liability
"We will pay damages for which the insured becomes legally responsible to others because of bodily injury or property damage to which this coverage applies." * * * [e.o.]
That is later succeeded by a subheading, providing in relevant part:
"Coverage N Exclusions
"This insurance does not cover certain situations.
"1. It does not cover property damage to the insured's own property. * * *
"2. It does not cover property damage to property rented to, occupied or used by, or in the care of the insured. However, it does cover property damage when caused by fire, smoke or explosion." [e.o.]
As in the case of section I, the coverage N exclusions do not contain any intentional acts provisions, however. Even later in this section, there is the following provision in a subheading accompanied in part by the following text:
"Section II  General Exclusions
"These exclusions apply to all coverages. They are in addition to those listed under Coverages N and O. Other exclusions or limitations may be found where they apply to a specific coverage. This insurance does not cover certain situations.
"1. It does not cover bodily injury or property damage expected or intended by an insured." [e.o.]
Travelers contends, and the trial court found, that this last provision avoids the insured's claim.
Travelers argues that the words, "[t]hese exclusions apply to all coverages," mean that the intentional acts exclusion contained under that subheading in section II applies to all coverages contained in the policy; therefore the insured's fire loss is excluded from coverage under section I because it is one of the coverages embraced in the words "all coverages." This argument invites us to erase all context, exclude all headings and sub-headings, ignore contrary provisions, and limit our attention to only the words Travelers selects to make its case. We are simply unable to do what Travelers suggests.
Courts may not isolate a single sentence or group of words in an insurance policy and read the isolated part alone and apart from other provisions; the goal is to arrive at a reasonable interpretation of the entire policy text to accomplish its stated meaning and purpose. The Praetorians v. Fisher, 89 So.2d 329 (Fla. 1956); James v. Gulf Life Ins. Co., 66 So.2d 62 (Fla. 1953). Such contracts are construed in accordance with the plain language of the policies as bargained for by the parties, and ambiguities are interpreted liberally in favor of the insured and strictly against the insurer who prepared the policy. Prudential Property & Casualty Ins. Co. v. Swindal, 622 So.2d 467 (Fla. 1993).
In a recent decision, which is otherwise distinguishable, the supreme court demonstrated how this rule applies to a policy divided into differing sections with differing coverages, and the argument is made that something contained in one section does not govern something in another; the court explained:
"Generally, courts will strive to interpret an automobile insurance policy based on the definitions contained within the policy. However, if the definition provided in one section of the policy is not applicable to the coverage at issue in another section, courts may be compelled to search elsewhere for a sensible and appropriate definition. In the instant case, the definition of motor vehicle that is included under the No-Fault section of the policy is not relevant to the exclusions discussed in the Uninsured Motor Vehicle section of the policy.
" * * * `where a contract of insurance is entered into on a matter surrounded by statutory limitations and requirements, the parties are presumed to have entered into such agreement with reference to the statute, *919 and the statutory provisions become a part of the contract.'"
Grant v. State Farm Fire and Casualty Co., 638 So.2d 936 (Fla. 1994) (quoting Standard Marine Insurance Co. v. Allyn, 333 So.2d 497 (Fla. 1st DCA 1976)). The subject of motor vehicle insurance is pervasively regulated by a welter of statutory provisions. It is thus understandable that such policies will be written under the inescapable omnipresence of these statutes. Where the policy uses a statutorily defined term, especially in the context of the subject of the particular statute, there is every reason to suppose that the carrier has employed the statutory definition.
There is, of course, no similar affecting force in this case. This is an ordinary homeowners property insurance, where the carrier had a freer hand to write its coverages around undesirable risks and to set out clear exclusions. Plainly Travelers knew how to exclude intentional acts from its fire coverage for the dwelling, as the exclusion from its liability coverage so ably demonstrates. It also knew how to exclude the insured's own personal property from certain risks  accepting this risk, discarding that  as again the liability exclusions show.
The fact that Travelers did not incorporate either one of these provisions into its section I coverages or exclusions is the best evidence of its clearly stated purpose and intent not to exclude intentional acts from its fire coverage on the dwelling. For, when a carrier has such freedom over the coverages it will insure, the nonpresence of expressed intentions on discrete subjects should ordinarily be taken as intentional noninclusion of the intention. The absence of the expression should mean the absence of the intent. Thus the failure to write an exclusion from coverage for fires caused by an insane person should be understood as a purposeful omission.
Even assuming that the section II exclusion could be properly deemed applicable to the section I coverage for fire losses, clear precedent from this court supports the insured's argument that insanity will ordinarily bar an insured from being deemed capable of violating an intentional acts exclusion. George v. Stone, 260 So.2d 259 (Fla. 4th DCA 1972); see also Arkwright-Boston Mfrs. Mut. Ins. Co. v. Dunkel, 363 So.2d 190 (Fla. 3d DCA 1978); Northland Ins. Co. v. Mautino, 433 So.2d 1225 (Fla. 3d DCA 1983), rev. denied, 447 So.2d 887 (Fla. 1984); American Indem. Co. v. McQuaig, 435 So.2d 414 (Fla. 5th DCA 1983).
In George, a doctor brought an action against Allstate for injuries he sustained when he was shot by the insured while he was treating the insured's mother. The insured's policy with Allstate had an exclusion for injury "caused feloniously or intentionally by or at the direction of an Insured." Allstate moved for summary judgment arguing there was no coverage under the exclusion. In opposing the motion, the doctor contended that the exclusion did not apply because the insured was insane at the time of the shooting, rendering him incapable of forming the requisite intent. The trial court granted Allstate's motion and the doctor appealed.
On appeal to this court, it was clear that no Florida court had yet determined whether an insured's insanity avoided an insurance policy exclusion of coverage for intentional acts. We explained that two different approaches to the question had been taken in other jurisdictions:
"One line of cases holds that if the particular injury is the result of an insane act, the intentional injury exclusion clause is inoperative and the insurer is liable. This line of cases is exemplified by Ruvolo v. American Casualty Company, 1963, 39 N.J. 490, 189 A.2d 204, and the cases there cited. In Ruvolo, the New Jersey court stated:
`In applying the exclusionary provision, however, whether in a life, accident, liability or fire policy, it has come to be commonly accepted that where the death or loss involved, be it of the insured or caused by the insured, is the product of an insane act, recovery is not barred.
`... .
`We hold that if the insured was suffering from a derangement of his intellect which deprived him of the capacity to govern his conduct in accordance with *920 reason, and while in that condition acting on an irrational impulse he shot and killed [the victim], his act cannot be treated as `intentional' within the connotation of the defendant's insurance contract.'
See also Rosa v. Liberty Mutual Insurance Company, D.Conn. 1965, 243 F. Supp. 407.
"The other line of authority holds that an injury inflicted by an insane person is `intentionally inflicted' where the actor understands the physical nature and consequences of the act, and had a purpose and intention to cause the injury, although he was mentally incapable of distinguishing right from wrong. In other words, a person may intentionally do a thing although he does not know right from wrong. In Colonial Life & Accident Insurance Company v. Wagner, Ky.App. 1964, 380 S.W.2d 224, it was stated:
`... a person may be excused from penalty if he is insane at the time he commits a criminal act. He may do the act with every intention of consummating it, but if it is shown that he was mentally insufficient, he is excused from the imposition of the usual sanctions. The absence of punishment, however, does not retrospectively expunge the original intention.'
See also DeLoache v. Carolina Life Insurance Company, 1958, 233 S.C. 341, 104 S.E.2d 875."
260 So.2d at 261-262. We went on to adopt the first view by stating:
"In the instant case, we determine that where the tortfeasor's mental state is such that he may be deemed insane, in the legal sense of the word, the better rule is that an injury caused by an insured while in that condition cannot be considered to have been caused feloniously and intentionally within the connotation of the words as used in an intentional injury exclusion clause. If * * * the insured in the instant case was suffering from a derangement of his intellect which deprived him of the capacity to govern his conduct in accordance with reason, and while in that condition acting on an irrational impulse he shot and injured plaintiff, his act was not intentional within the meaning of the exclusionary clause." [c.o.]
260 So.2d at 262. Because the issue as to whether the insured was insane at the time of the shooting had not yet been determined, however, we reversed the summary judgment and remanded the case for trial. 260 So.2d at 262. The other districts have followed the rule set forth in George in the decisions cited above.
Notwithstanding our decision in George, the trial court followed a recent federal court decision suggesting that George had been implicitly overruled by the state supreme court. In Allstate Insurance Co. v. Cruse, 734 F. Supp. 1574, 1580 (M.D.Fla. 1989), a federal district judge concluded that the supreme court decision in Landis v. Allstate Insurance Co., 546 So.2d 1051 (Fla. 1989), "undermines the viability of earlier cases where coverage was not barred under the intentional acts exclusion when the insured was insane." Cruse involved a shooting spree by the insured resulting in injuries and death.
Landis concerned an attempt by the operators of a day care facility to find coverage under their homeowners' policy for lawsuits against them for sexually molesting children left in their care. The trial court granted summary judgment on the coverage question in favor of Allstate on the basis of the "business pursuits" exclusion in the policy. The third district affirmed, but did so on the basis of the intentional acts exclusion and the "right-for-any-reason" principle of appellate review. The supreme court approved the decision on the basis of both exclusions. As to the intentional acts exclusion, however, the court said:
"Turning to the intentional acts exclusion, we find that no coverage could exist under this clause. The petitioners argue that the exclusion does not apply, as a matter of law, because there is a material issue of fact concerning whether the [insureds] specifically intended to commit harm. They cite the majority opinion in Zordan [v. Page, 500 So.2d 608 (Fla. 2d DCA 1986), rev. denied, 508 So.2d 15 (Fla. 1987)], as support for that contention. In that case, a sharply divided panel of the *921 Second District Court of Appeal held that an intentional acts exclusion does not apply if the insured does not have the specific intent to cause harm, unless the insured can be found to have subjectively intended the result. 500 So.2d at 609. However, Judge Frank dissented, pointing out that it is inherent in the logic of our system that `some form of harm inheres in and inevitably flows from the proscribed behavior.' Id. at 614 * * * The proscribed behavior in that case was the same as in these cases, namely improper fondling of children.
"We agree with Judge Frank's reasoning and reject the holding of the majority in Zordan. To hold that a child molester intends anything but harm and long term emotional anguish to the child defies logic. The petitioners argue that Illeana Fuster's diminished mental capacity [e.s.] prevented her form forming any specific intent to harm the children. Nonetheless, we believe that specific intent to commit harm is not required by the intentional acts exclusion. Rather, all intentional acts are properly excluded by the express language of the homeowners policy."
546 So.2d at 1053.[2]
The question raised by Cruse is whether the supreme court intended by the statements, "we believe that specific intent to commit harm is not required by the intentional acts exclusion," and "all intentional acts are properly excluded by the express language of the homeowners policy," that the intentional acts exclusion in the present case is similarly effective in the context of insane acts by an insured claimant. As Justice Kogan described the issue he faced in Landis:
"The petitioners argue that the exclusion does not apply, as a matter of law, because there is a material issue of fact concerning whether the Fusters specifically intended to commit harm. They cite the majority opinion in Zordan as support for this contention."
Landis, 546 So.2d at 1053. In other words, the primary intentional acts argument made in Landis and Zordan  both sexual molestation cases  was that coverage was not excluded under the intentional acts provision, even though an act causing injury was intentionally done and injury was the natural and probable result of the act, where the insured did not subjectively intend the injurious result. The underlying premise was that sexual molestation does not imply any intent to cause injury to anyone, merely a purpose to gratify the offender's sexual desires. It was that dubious contention that the supreme court (and Judge Frank) squarely rejected.
That of course is far removed from the real contention here. Indeed we join the parade of appellate judges who "cannot improve upon Judge Frank's analysis and reasoning and therefore adopt as our own," see also Landis v. Allstate Ins. Co., 516 So.2d 305, 307 (Fla. 3d DCA 1987), the following:
"Our courts have been unwilling to extend the principle that one intends the natural and probable consequences of his act in the circumstance where an insurance policy, as in the present matter, excludes from coverage injuries which are specifically intended. See e.g. Phoenix Insurance Company v. Helton, 298 So.2d 177 (Fla. 1st DCA 1974); Cloud v. Shelby Mutual Insurance Co. of Shelby, Ohio, 248 So.2d 217 (Fla. 3d DCA 1971). The logic underlying rejection of the `reasonably foreseeable consequences' rule to insurance policies excluding intentional torts derives from the notion that injuries occur from a vast array of intentional acts but if such injuries were deemed foreseeable, they, too, would be intentional and hence there would be no coverage. I cannot embrace an unyielding adherence to this reasoning in the current setting. Precedent is instructive, but it is not imprisoning." [e.s.]
Zordan, 500 So.2d at 613 (Frank, J. dissenting). We have especial agreement with the part we have highlighted. Most negligent acts begin with an intention to do what the actor was doing when the accident occurs. *922 To say that this intentional acts exclusion has the kind of effect contended by Travelers is to start eroding ordinary tort law for reasons wholly inapplicable to the dispute.
The intentional acts exclusion talked about in almost all of these cases relates to liability coverage. Here it is contended to relate to fire insurance protecting a dwelling. There is a public policy aura around automobile liability insurance and many other kinds of general liability protection, where unknown third parties are intended beneficiaries. Although that public interest allows the intentional acts exclusion to avoid coverage for sexual offenders who claim not to intend to injure their victims, generally public policy refuses to allow tortfeasors or their insurers to exclude from their liability coverage insane acts for which there is no realistic control and which occur freakishly and unpredictably  in the same way that lightning strikes and (we do not hesitate to say) fire might erupt.
It is unlikely that such considerations would govern as to homeowner's fire coverage, which is almost always affected solely by the economic interests of the contracting parties. If a homeowner contemplates protection against fire loss from the insured's own insanity, whether the protection will ultimately be purchased is a function of the amount of premium charged. Whether a carrier will choose to protect against such a risk is equally a function of the premium charged. Aside from family members or other persons jointly inhabiting the dwelling covered, perhaps, there is no real interest of a third party for the law to concern itself about.
In any case, our view is that the law on intentional conduct exclusions for insane acts is pretty much where our decision in George found it. In the absence of policy language to the contrary, insureds whose insane acts result in an otherwise covered losses are not excluded from coverage by reason of an intentional acts exclusion. It was thus error for the court to enter judgment in favor of Travelers on its post trial motions. On remand the court shall enter judgment declaring coverage in favor of the insured.
REVERSED AND REMANDED WITH DIRECTIONS.
ANSTEAD and KLEIN, JJ., concur.
NOTES
[1] There are 11 additional property insurance optional coverages available under section I, entitled Coverages E (Earthquake), F (Forgery), G (Money), H (Securities), I (Fire Department Service Charge), J (Extended Theft), M (Property At Other Locations), U (Inflation Coverage), V (Silverware), W (Jewelry and Furs), and Y (Personal Property Replacement). Under section II, there are 5 additional optional coverages entitled Coverages P (Office, School or Studio), Q (Watercraft), R (Business Pursuits), S (Snowmobiles), and T (Personal Injury). The insured in this case opted for Coverages J and T.
[2] Landis clearly deals with an exclusion relating to the coverage being asserted by the claimant, instead of an exclusion dealing with an irrelevant coverage, as is the case here. That alone does not address, however, the apparently sweeping construction given by the federal court in Cruse to the statement at the end of the part of the opinion quoted above.