325 So.2d 459 (1975)
George STEVENS et al., Appellants,
v.
Theodore J. HORNE, Jr., and United States Fidelity and Guaranty Company, a Foreign Corporation, Appellees.
No. 74-1231.
District Court of Appeal of Florida, Fourth District.
December 12, 1975.
Rehearing Denied and Mandate Stayed February 3, 1976.
*460 Charnelle H. Summers, Jr., Edw. P. Swan and Charnelle H. Summers, Jr., Miami, for appellants Carl Gunderson, Berry Goodstein, Larry D. Lynch, Robert W. Higgins, Richard C. Sems, and George Stevens.
Patrick M. Scanlon, Adair, Goldthwaite, Stanford & Daniel, P.A., Atlanta, Ga., and Ralph J. Ray, Jr., Naze & Ray, Fort Lauderdale, for appellant-Communication Workers of America, Local 3107.
Martin J. Sperry, Carey, Dwyer, Austin, Cole & Selwood, P.A., Fort Lauderdale, for appellee U.S. Fidelity and Guaranty Co.
ALDERMAN, JAMES E., Associate Judge.
Theodore J. Horne, Jr. filed a suit against Communication Workers of America, Local 3107, hereinafter referred to as the union and certain individual union members alleging tortious misconduct in the nature of assault, battery, false imprisonment, libel by effigy and intentional infliction of emotional distress.
The union had a special multi-peril policy of liability insurance with United States Fidelity and Guaranty Company hereinafter referred to as USF & G. The union and the individual defendants notified USF & G of the pending litigation requesting that the insurance company defend the action. USF & G thereafter disclaimed any liability or responsibility for coverage under the policy. Both the union and the individual defendants filed third party actions against USF & G for failure to provide coverage under the contract of insurance issued in the union's name.
Plaintiff Horne's case commenced before a jury which rendered a verdict on behalf of the union and all individual members as to Count I (assault), Count II (battery) and Count III (false imprisonment), and against the union and six individual members on Count IV (libel by effigy) and Count V (intentional infliction of emotional distress). The trial court entered judgments in accordance with the jury's verdicts. No appeals from these judgments were taken.
The remaining issues regarding insurance coverage were heard before the trial judge who entered his order denying coverage. Both the union and the individual members bring this appeal from that order.
The following facts are relevant to an understanding of the issues in this case. An economic strike was commenced by the union and its parent international union against Southern Bell Telephone and Telegraph Company. A picket line was established at Southern Bell's North Dade plant facility in Miami, Florida. Horne, a non-union employee of Southern Bell, did not participate in the strike. A scaffolding was erected by the strikers at or adjacent to the plant and a life-like dummy was hung by a noose. On the scaffolding was placed a sign entitled "Ted Horne, Super Scab". The next day, the scaffolding and dummy were placed in the back of a pickup truck and were transported to Horne's home in Broward County. A group of persons, including the individual defendants, accompanied the truck to Horne's residence where they made several passes in front of his home.
*461 USF & G initially refused to defend, alleging first that it had been prejudiced by late notice of the pending action; and second, that the policy provided no coverage because of an exclusionary clause which provided in part, as follows:
"This insurance does not apply: (b) to personal injury arising out of the willful violation of a penal statute or ordinance committed by or with the knowledge or consent of any insured."
By agreement of the parties, the defense of late notice was tried first, prior to the trial of the main action, resulting in a ruling in favor of the union and the individual members. The remaining defense, based upon the exclusionary clause, was to be heard and determined by the court after the trial of the main action.
Counsel for USF & G then announced that it was going to defend the main action on behalf of the union, but not the individual members. Subsequently, counsel for USF & G tendered to the union a letter advising that while USF & G was affording the union a defense, it was doing so under a reservation of rights. The union then delivered to counsel for USF & G, written notification of its refusal to accede to the carrier's defense with a reservation of rights. Nevertheless, counsel for USF & G continued to participate fully in the case and the trial court specifically found in its order that USF & G, immediately following the adverse ruling on the issue of prejudice by late notice, had undertaken the defense of the union.
The first issue to be determined is whether USF & G had a duty to defend plaintiff's second amended complaint on behalf of the union and the individual members. On this issue, Florida law is clear that an insurer's duty to defend an action against its insured by a third person is determined by the allegations of the complaint. Bennett v. Fidelity & Casualty Company of New York, Fla.App. 1961, 132 So.2d 788; Consolidated Mutual Insurance Company v. Ivy Liquors, Fla.App. 1966, 185 So.2d 187. Moreover, where only portions of a complaint fall within the coverage of the insurance policy and other portions fall outside the policy, the insurer has a duty to defend the entire suit. C.A. Fielland, Inc. v. Fidelity & Casualty Company of New York, Fla.App. 1974, 297 So.2d 122; St. Paul Fire and Marine Insurance Company v. Icard, Merrill, Cullis & Timm, Fla.App. 1967, 196 So.2d 219.
Looking to the allegations of the complaint, we see that the complaint alleged alternate theories of liability on the part of the union. It first alleged that the individual defendants were members of the union and were acting as its agents, servants or employees. This theory is one of vicarious liability, requiring no willful misconduct on the part of the union. The alternate theory is one of direct liability in that the acts committed by the individual defendants were allegedly caused, procured or directed by defendant union.
We conclude, under the alternate allegation of vicarious liability, that USF & G did have a duty to defend the union. This duty arose on June 2, 1972, when the union first notified USF & G of the pending litigation. Not until January 16, 1974, did USF & G tender a defense to the union. The union is entitled to reimbursement for all necessary expenses, including attorneys fees, which it reasonably expended in the defense of the main action from June 2, 1972. Upon remand of this case, the trial judge below upon hearing after notice shall determine and award these expenses.
We reach a contrary conclusion as to the individual union members. The complaint as to these defendants clearly and unequivocally alleged a willful violation of a penal statute or ordinance committed by them or with their knowledge or consent. USF & G was within its rights when it refused under the terms of its policy to defend these persons.
*462 The court having found that USF & G had a duty to defend the union, it does not necessarily follow that it has a duty to indemnify. While the duty to defend turns on the allegations of the complaint, the duty to indemnify is based upon the facts established at trial, and the possible application of any exclusionary clauses contained in the insurance agreement.
The union contends that USF & G did not meet its burden of proving the applicability of the exclusionary clause. The union primarily argues that the particular conduct complained of was "protected activity" within the meaning of federal labor law, and therefore not violative of a state penal statute. Its argument is based upon the U.S. Supreme Court case of Letter Carriers v. Austin, 418 U.S. 264, 94 S.Ct. 2770, 41 L.Ed.2d 745 (1974). In that case, a union, in an effort to organize members of a bargaining unit who did not belong to the union, published a "List of Scabs", together with a defamatory definition of the word "scab". Three of the non-union letter carriers who were named on the "List of Scabs" filed a state court libel action which resulted in money judgments against the union. In reversing the state court decision, the U.S. Supreme Court held that the use of the epithet "scab" was protected under federal labor law and could not be the basis of a state libel judgment.
We believe that the present case is factually distinguishable from Letter Carriers v. Austin, supra. The trial court below found as a matter of fact that the acts complained of in Count IV and Count V were clearly violative of Florida Statutes Section 447.09, and further that all the testimony presented to the court showed that the statute was willfully violated.
Much more is involved in the present case than the use of the epithet "scab". Appellants exceeded the use of mere intemperate, abusive, or insulting language to express their contempt for a person who chose not to join the union. Their action was not limited to just publishing the words "Ted Horne, Super Scab". The hanging of Ted Horne in effigy with the implied threat of violence to him is a clear violation of Florida Statute, Section 447.09(11), which provides:
"It shall be unlawful for any person:
(11) To coerce or intimidate any employee in the enjoyment of his legal rights, including those guaranteed in § 447.03, or to intimidate his family, picket his domicile or injure the person or property of such employee or his family."
The carrying of the effigy to Horne's domicile in Broward County to intimidate him and his family was a further violation of the statute.
We recognized the supremacy of federal labor laws in the area of state regulations and that a state may not prohibit the exercise of rights protected by federal law. However, we believe federal law does not grant to a union or union members the legal right to coerce or intimidate non-union employees in the enjoyment of their legal rights. Likewise there is no legal right granted to a union or union members to intimidate the family, picket the domicile or injure the person or property of non-union employees or their families. Such conduct is made a crime in Florida, and the record in this case supports the trial judge's finding that appellants violated this penal statute.
The final point to be determined is whether USF & G waived its defense regarding indemnity coverage when it undertook the defense of the union on the commencement of the main trial.
The union contends that in order to preserve the ultimate question of indemnity coverage and meet its duty to defend, USF & G must have obtained a reservation *463 of rights agreement. It is the union's position that if it had agreed to the reservation of rights, then USF & G could have defended without abandoning the ultimate question of indemnity liability. However, since it refused to agree, it argues that USF & G waived its defenses or is estopped to assert them. The trial judge held that there was no waiver of defenses.
The rule in Florida appears to be contrary to that urged by the union. The Third District, in the case of Midland National Insurance Company v. Watson, Fla. App., 188 So.2d 403 (1966), recognized and applied the rule that, "an insurer may, by timely notice to the insured, reserve its right to claim that the policy does not cover the situation at issue, while defending the action." The authority cited for this rule was the New York case of O'Dowd v. American Surety Co. of New York, 3 N.Y.2d 347, 165 N.Y.S.2d 458, 463, 144 N.E.2d 359, 363 (1957), and the cases cited therein. The Fifth Circuit in Duke v. Hoch, 468 F.2d 973, 984 (1972), has applied the rule as expressed in Midland National Insurance Company v. Watson, supra, as the law of Florida.
Based upon the circumstances of this case, we cannot say that USF & G waived its defenses regarding indemnity coverage when it undertook, after notice of reservation of rights, but without a waiver of rights agreement, the defense of the union on the commencement of the main trial.
This case is remanded to the trial court for the purpose of determining and awarding to the union reimbursement for all necessary expenses, including attorneys fees, which it reasonably expended in the defense of the main action from June 2, 1972. In all other respects the judgment is affirmed.
Affirmed, in part, reversed, in part, and remanded.
WALDEN, C.J., and OWEN, J., concur.