637 So.2d 320 (1994)
UNITED SERVICES AUTOMOBILE ASSOCIATION, Appellant,
v.
Robert E. SELZ, Appellee.
No. 93-0476.
District Court of Appeal of Florida, Fourth District.
May 25, 1994.
*321 Shelley H. Leinicke of Wicker, Smith, Tutan, O'Hara, McCoy, Graham & Lane, P.A., Fort Lauderdale, for appellant.
Robert Shupack and Mitchell J. Olin of Schatzman & Shupack, P.A., Miami, for appellee.
PER CURIAM.
This is an appeal by the insurer from a final judgment[1] in favor of its insured in an action for declaratory judgment in which the trial court determined that the insurer's action was collaterally estopped by the prior case of United Services Automobile Ass'n v. Elitzky, 358 Pa.Super. 362, 517 A.2d 982 (1986), appeal denied, 515 Pa. 600, 528 A.2d 957 (1987). We reverse and remand.
We disapprove of the manner in which this matter was handled at the trial level in that the insured's motion to dismiss clearly went far beyond the four corners of the insurer's complaint in raising the issue of defensive collateral estoppel. Such defense did not appear from the face of the complaint so as to warrant its being raised or considered by the trial court at that time. The current writings on the issue of defensive collateral estoppel have properly arisen at the appellate level following summary final judgment. Zeidwig v. Ward, 548 So.2d 209 (Fla. 1989); Dixie Auto Transp. Co. v. Louttit, 588 So.2d 68 (Fla. 2d DCA 1991); Hochstadt v. Orange Broadcast, 588 So.2d 51 (Fla. 3d DCA 1991); Verhagen v. Arroyo, 552 So.2d 1162 (Fla. 3d DCA 1989), rev. denied, 574 So.2d 144 (Fla. 1990); Keramati v. Schackow, 553 So.2d 741 (Fla. 5th DCA 1989).
Turning to the merits of the appeal, we agree with the trial court's conclusion that identity of issues, and not identity of parties, is critical to the application of defensive collateral estoppel in a civil to civil setting.
In Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971), the United States Supreme Court looked to several policy reasons for permitting defensive collateral estoppel, even where there is no identity of parties, namely judicial economy and the misallocation of resources of both the plaintiff and defendant in relitigating decided issues. The Court explained that "the broader question is whether it is any longer tenable to afford a litigant more than one full and fair opportunity for judicial resolution of the same issue." Id. at 328, 91 S.Ct. at 1442. "Permitting repeated litigation of the same issue as long as the supply of unrelated defendants holds out reflects either the aura of the gaming table or `a lack of discipline and of disinterestedness on the part of the lower courts, hardly a worthy or wise basis for fashioning rules of procedure.'" Id. (citation omitted). Several Florida courts have also approved of defensive collateral estoppel in a civil to civil context where there is no identity of parties. Dixie Auto, 588 So.2d at *322 68; Hochstadt, 588 So.2d at 51; Verhagen, 552 So.2d at 1162.
However, the Blonder-Tongue court cautioned that a party may only be collaterally estopped if that party previously has had an opportunity to litigate the pertinent issue. It is a violation of due process to collaterally estop a party who has never had an opportunity to present evidence and arguments on his or her claim. Id. "Due process prohibits estopping them despite one or more existing adjudications of the identical issue which stand squarely against their position." Id. The party against whom collateral estoppel is sought must have been a party in the previous action. Compare Dixie Auto, 588 So.2d at 68 and Hochstadt, 588 So.2d at 51 and Verhagen, 552 So.2d at 1162 with Mathias v. Uniroyal, Inc., 549 So.2d 1154 (Fla. 3d DCA 1989).
Accordingly, identity of parties is irrelevant for the application of defensive collateral estoppel based on the policy reasons recited in Blonder-Tongue, subject to its foregoing admonitions. See also Freehling v. MGIC Fin. Corp., 437 So.2d 191 (Fla. 4th DCA 1983).
Nevertheless, the trial court erred in finding the same issues that exist in the present case were concluded by the case cited in the insured's motion to dismiss; namely, United Services Automobile Ass'n v. Elitzky.
In Elitzky, the Pennsylvania court interpreted the following USAA intended harm exclusionary clause: "Medical Payments to others do not apply to bodily injury or property damage ... [w]hich is expected or intended by the insured." Id. 517 A.2d at 985. USAA asserted that it was not responsible for defending or indemnifying the insured because the underlying action was based on malicious defamation and intentional infliction of emotional injury. Id. 517 A.2d at 984. The court held that the exclusion clause excluded coverage for "only injury and damage of the same general type which the insured intended to cause." Id. 517 A.2d at 989. Since the complaint contemplated injuries that may have been within the scope of the insured's policy, USAA was required to defend the insured "until the insurer can confine the claim to a recovery that the policy does not cover." Id. 517 A.2d at 985. The court, however, determined that the issue of USAA's obligation to indemnify the insured was not yet ripe for judicial resolution because the insured may be successful in the underlying action.
In the present case, appellant asserted in its declaratory action that, pursuant to an identical exclusionary clause, it was not required to defend or indemnify appellee with respect to the underlying case against appellee. The remaining counts at the time of this appeal were intentional infliction of emotional distress and libel and slander. Moreover, appellant also argued in its declaratory action that it was not responsible to appellee in this case because other provisions of the policy excluded coverage of injury or liability arising from or in connection with the insured's business. This issue was not touched upon by the opinion in Elitzky.
The only issue that was actually litigated and determined in Elitzky was whether the intended injury exclusion clause relieved the insurer of the obligation to defend the insured in the underlying action. Therefore, this is the only issue to which collateral estoppel could apply. The exclusion clauses relating to injury or liability arising from insured's business were not litigated and adjudicated in Elitzky and therefore appellant was not collaterally estopped by Elitzky from raising this issue in the present action.

THE DUTY TO DEFEND
In Florida, "an insurer's duty to defend an action against its insured by a third person is determined by the allegations of the complaint." Stevens v. Horne, 325 So.2d 459, 461 (Fla. 4th DCA 1975); see also Federal Ins. Co. v. Applestein, 377 So.2d 229 (Fla. 3d DCA 1979). "[S]o long as one count of the complaint against [the insured] [is] within the scope of liability coverage, [the insurer] [has] a duty to defend, at least until such time as the covered portion of the claim [is] eliminated from the suit." Employers Commercial Union Ins. Co. v. Kottmeier, 323 So.2d 605, 607 (Fla. 2d DCA 1975) (citation omitted). This is the same rule of law as that in *323 Pennsylvania and as applied by the Elitzky court. 517 A.2d at 985.
In determining that the injuries allegedly caused by the insured may be within the scope of the insured's policy, the Elitzky court interpreted the meaning of the word "intended" as contemplated by the exclusion provision and Pennsylvania law. In discussing this issue, the court explained that "[t]he vast majority of courts hold that the clause precludes coverage if the insured acted with the specific intent to cause some kind of bodily injury or damage... . However, some courts appear to have held that the exclusion only applies if the actor intended to cause a harm of the same general type as that which did result." Id. 517 A.2d at 986-87 (emphasis added). After considering the Pennsylvania Supreme Court's interpretation of a similar clause, the Elitzky court determined that the latter interpretation was the rule of law in Pennsylvania. Id. 517 A.2d at 987.[2]
Florida follows the former, majority interpretation. In Prudential Property & Casualty Insurance Co. v. Swindal, 622 So.2d 467, 472-73 (Fla. 1993), the supreme court discussed State Auto Mutual Insurance Co. v. Scroggins, 529 So.2d 1194 (Fla. 5th DCA 1988), in which the insured intentionally pulled a chair out from under someone as that person went to sit down. The supreme court explained that insurance coverage was properly excluded under an intentional injury clause because "[s]ome form of bodily injury must have been expected or intended to result under those circumstances, and `[t]he fact that an unintended serious injury resulted from the fall is irrelevant to the issue of coverage.'" 622 So.2d at 473 (emphasis added by supreme court) (quoting Scroggins, 529 So.2d at 1195).[3] In Colonial Life & Accident Insurance Co. v. Cooper, 378 So.2d 806 (Fla. 3d DCA 1979), the insured jump off a building intending to injure himself so that he could collect damages from the owner of the building. Instead, the insured died. The Cooper court determined that the insured's death was intentional even though the insured did not intend this result. "[W]hen an insured intends to cause an injury, the result of his action does not constitute an accident even if the damage is more severe than he wished or anticipated." Id. See also Greater Palm Beach Symphony Ass'n v. Hughes, 441 So.2d 1171 (Fla. 4th DCA 1983) (no exclusion under intentional injury exclusion unless insured acted with specific intent "to harm" or "to cause injury"); Phoenix Ins. Co. v. Helton, 298 So.2d 177, 181 (Fla. 1st DCA 1974) (adopting majority rule that intentional injury exclusion applies where insured acts with specific intent "to cause harm" to third party), cert. discharged, 330 So.2d 724 (Fla. 1976).
Pursuant to the foregoing analysis, it was improper for the trial court to collaterally estop appellant's declaratory action based upon Elitzky on this point of appellant's duty to defend because the legal standard in Pennsylvania is different from that in Florida. In Florida, it would be easier for the exclusion clause to apply because Florida does not require that the intended injury be of the "same general type" as the resulting *324 injury. Appellant should have been given the opportunity to argue under the correct legal standard.[4] Since a different standard applies in Pennsylvania than in Florida, different evidence would be necessary to establish whether the exclusionary clauses applied in each case. Therefore, collateral estoppel was inappropriately applied to bar appellant's declaratory action.
Furthermore, any doubt as to whether a particular issue was actually litigated in the previous action or whether appellant has had its day in court must be resolved in favor of appellant and the conclusion that collateral estoppel does not bar the litigation of the pertinent issue in the subsequent action. Hittel v. Rosenhagen, 492 So.2d 1086, 1089-90 (Fla. 4th DCA 1986).

THE DUTY TO INDEMNIFY
In addition, the issue of indemnity was not determined by the Elitzky court and therefore cannot act to collaterally estop litigation of the issue of whether appellant must indemnify appellee if appellee is found liable in the underlying action. The Elitzky court ruled that this issue was not ripe for judicial determination and, therefore, not appropriate for declaratory relief. The Elitzky court dismissed without prejudice USAA's request for declaratory relief on this issue. Under Florida law, the same result is reached. In Florida, whether the insurer is ultimately responsible for indemnifying the insured is to be determined by "the facts established at [the underlying] trial, and the possible application of any exclusionary clauses contained in the insurance agreement." Stevens, 325 So.2d at 462; see also Hughes, 441 So.2d at 1172; Applestein, 377 So.2d at 233. Therefore, it was improper for the trial court to adjudicate this issue prior to the conclusion of the underlying action against appellee by the employee.
Pursuant to our reversal on the merits of this action, we also reverse the trial court's final judgment awarding attorneys' fees and costs to appellee.
GLICKSTEIN, WARNER and POLEN, JJ., concur.
NOTES
[1] It was first necessary for this court to require appellant to obtain a final, appealable order as required by Dobrick v. Discovery Cruises, Inc., 581 So.2d 645 (Fla. 4th DCA 1991). We mention this because the trial court's order merely granted the insured's motion to dismiss  a nonappealable, non-final order from which the insurer appealed. Hopefully, by our mentioning what occurred here, Dobrick will not be forgotten by litigants and trial courts in our district. Appellant obtained a final judgment rather than a final order of dismissal, which is explainable, perhaps, from the posture of the case hereinafter discussed.
[2] The Elitzky court's full holding on this issue is as follows:

In summary, we hold that an intended harm exclusionary clause in an insurance contract is ambiguous as a matter of law and must be construed against the insurer. We hold that such a clause excludes only injury and damage of the same general type which the insured intended to cause. An insured intends an injury if he desired to cause the consequences of his act or if he acted knowing that such consequences were substantially certain to result.
Id. 517 A.2d at 989. The Elitzky court also interpreted the term "expected," holding that it meant that "the insured acted even though he was substantially certain that an injury generally similar to the harm which occurred would result." Id. 571 A.2d at 991. This is the context in which the Elitzky court stated that Pennsylvania law was in line with that of Florida. "Therefore, we find ourselves in agreement with those jurisdictions which have ruled that intentional or expected are synonymous for purposes of insurance exclusionary clauses," referring to Grange Mutual Casualty Co. v. Thomas, 301 So.2d 158 (Fla. 2d DCA 1974). Elitzky, 517 A.2d at 991-92.
[3] Also, in explaining Landis v. Allstate Insurance Co., 546 So.2d 1051 (Fla. 1989), the court reiterated that a specific intent to harm is still required under Florida law.
[4] See Wilson v. St. Louis & San Francisco R.R., 309 So.2d 604 (Fla. 1st DCA 1975) (collateral estoppel does not apply where there has been a change in the law), quashed on other grounds, 338 So.2d 192 (Fla. 1976).