[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-13628

Non-Argument Calendar

_____

THE CINCINNATI SPECIALTY UNDERWRITERS
INSURANCE COMPANY,

Plaintiff-Counter Defendant-Appellee
Cross- Appellant,

versus

KNS GROUP, LLC,

Defendant-Counter Defendant-Cross- Appellee,

GM&P CONSULTING AND GLAZING
CONTRACTORS, INC.,

2                Opinion of the Court                21-13628

Defendant-Counter Claimant-Appellant
Cross-Appellee,

GEMINI INSURANCE COMPANY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 0:20-cv-61349-WPD

_____

Before JORDAN, NEWSOM, and MARCUS, Circuit Judges.

PER CURIAM:

A casino owner unhappy with the quality of construction on its new casino sued its general contractor and others in Maryland state court. The general contractor filed a third-party complaint against a subcontractor, and that subcontractor's insurer filed suit in the United States District Court for the Southern District of Florida, seeking a declaratory judgment that it need not defend the general contractor and subcontractor. This appeal addresses which parties the insurer must defend, based on the coverage provisions and exclusions in KNS Group, LLC ("KNS")'s insurance policy with Cincinnati    Specialty    Underwriters    Insurance    Company

("Cincinnati"). After careful review, we affirm the district court's (1) grant of summary judgment in favor of Cincinnati on the basis that it has no duty to defend or indemnify GM&P Consulting and Glazing Contractors, Inc. ("GM&P") in the underlying lawsuit; (2) grant of summary judgment in favor of KNS on the basis that Cincinnati has a duty to defend KNS; and (3) conclusion that it is premature to ascertain whether Cincinnati has a duty to indemnify KNS.

## I.

The parties in this case came together to build the Maryland Live! Casino and Hotel in Anne Arundel County, Maryland. Tutor Perini Building Corporation ("Tutor Perini"), the general contractor leading the construction project, hired GM&P to provide exterior glazing for the building. GM&P, in turn, enlisted subcontractor KNS to assist it by glazing glass and installing window walls. The parties signed a contract on June 5, 2017, in which KNS agreed to "take out, maintain, and pay all premiums for" commercial general liability and other types of insurance, and to indemnify GM&P for liability for damages "to person or property caused in whole or in part by any act, omission, or default by the sub-contractor[.]"

KNS acquired commercial liability insurance ("the Policy") from Cincinnati for the relevant period. The Policy covered losses due to "property damage," which it defined as "[p]hysical injury to tangible property" or "[l]oss of use of tangible property that is not physically injured." The Policy "include[d] as an additional insured" any party that KNS, the named insured, provided in writing

that it would insure under its policy.  However, the Policy warned that it would cover those additional insured parties:

> only with respect to "bodily injury," "property damage" or "personal and advertising injury" caused, in whole or in part, by:
>
> 1. [The named insured's] acts or omissions in the performance of [its] ongoing operations for the additional insured;
>
> 2. The acts or omissions of those acting on [the named insured's] behalf in the performance of [its] ongoing operations for the additional insured[.]

The present case stems from a June 25, 2020 lawsuit ("the Underlying Action") brought by PPE Casino Resorts Maryland, LLC ("PPE"), the casino's owner, against its general contractor and subcontractors in the Circuit Court for Anne Arundel County.  The state-court complaint alleged, *inter alia*, that GM&P installed a defective "Glass Façade" that has "loose gaskets between window panels, damaged sealants and panel frames, and misaligned window wall panels creating the risk of property damage."  PPE asserted that GM&P's negligent furnishing of materials and negligent installation of the Glass Façade was a breach of GM&P's duty to PPE to complete the façade "in a safe manner and without causing property damage to PPE or creating the risk of property damage."

GM&P responded with a third-party complaint in the Underlying Action against KNS and two other third-party defendants that played roles in the construction process.  In it, GM&P brought

claims against KNS for breach of contract and negligence due to KNS's alleged defective construction of the casino. GM&P also raised a common-law indemnification claim, as well as a contractual-indemnification claim, alleging that KNS "expressly or impliedly agreed to indemnify and/or defend GM&P for any and all damages assessed against GM&P due to their acts or omissions."

On July 7, 2020, Cincinnati filed the instant lawsuit in federal district court, seeking a declaratory judgment that it has no duty to defend and no duty to indemnify KNS or GM&P in the Underlying Action. According to Cincinnati, the policy "provides in part that no coverage is afforded to an additional insured where there is no coverage for the named insured (i.e., KNS)." Gemini Insurance Company, which provides GM&P with commercial general liability insurance, intervened in the suit on the side of GM&P and KNS.

The parties then filed cross-motions for summary judgment, and the district court ruled that Cincinnati has a duty to defend KNS in the Underlying Action, and that Cincinnati's narrower duty to indemnify KNS is not yet ripe for adjudication, but that Cincinnati has no duty to defend and no duty to indemnify GM&P in the Underlying Action. GM&P timely appealed this ruling, and Cincinnati filed a cross-appeal of the district court's ruling that it has a duty to defend KNS in the Underlying Action.

## II.

We review a district court's summary judgment ruling *de novo*, viewing the facts in the light most favorable to the non-

movant. *Hallums v. Infinity Ins. Co.*, 945 F.3d 1144, 1148 (11th Cir. 2019). Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We also review *de novo* the interpretation of insurance contracts, *see Hallums*, 945 F.3d at 1148, which, in this diversity case, we construe in accordance with Florida law, *see State Farm Fire and Cas. Co. v. Steinberg*, 393 F.3d 1226, 1230 (11th Cir. 2004).

Under Florida law, we read insurance contracts "according to their plain meaning," considering the provisions in tandem to find the most reasonable and probable interpretation. *Garcia v. Fed. Ins. Co.*, 969 So. 2d 288, 291 (Fla. 2007) (quotations omitted); *see also Gilmore v. St. Paul Fire & Marine Ins.*, 708 So. 2d 679, 680 (1st Fla. DCA 1998). Policy language is deemed ambiguous only if "the relevant policy language is susceptible to more than one reasonable interpretation, one providing coverage and another limiting coverage." *Garcia*, 969 So. 2d at 291 (quotations omitted).

An insurer's duty to defend an insured in a legal action based on Florida law "arises when the complaint alleges facts that fairly and potentially bring the suit within policy coverage," and does not require delving into the merits of a case. *Jones v. Fla. Ins. Guar. Ass'n*, 908 So. 2d 435, 442–43 (Fla. 2005). We analyze the duty to defend by comparing the allegations in the complaint with the language of the policy. *Id.* We resolve any doubts about whether an insurer has a duty to defend in favor of the insured. *Id.* at 443.

However, an insurer need not defend an insured party if a policy exclusion applies. *Keen v. Fla. Sheriffs' Self-Ins. Fund*, 962 So. 2d 1021, 1024 (4th Fla. DCA 2007). If an insured satisfies its initial burden of showing that policy coverage applies, "the burden shifts to the insurer to prove that the loss arose from a cause which is excepted." *Hudson v. Prudential Prop. and Cas. Ins. Co.*, 450 So. 2d 565, 568 (2d Fla. DCA 1984).

## III.

Turning first to GM&P's appeal, we conclude that Cincinnati's additional insured endorsement does not provide coverage to GM&P. The Policy limits GM&P's coverage to "bodily injury," "property damage" or "personal and advertising injury" caused, in whole or in part, by KNS or KNS's agents. Relying on the "plain meaning" of the Policy, *see Garcia*, 969 So. 2d at 291, we read it to cover GM&P only for damages that KNS or KNS's agents completely or partially caused. The complaint in the Underlying Action alleges that GM&P was negligent in its furnishing of materials and installation of the Glass Façade. It alleges no negligence by KNS nor any of its agents. Without more, Cincinnati has no duty to defend GM&P in the Underlying Action. Nor, moreover, does Cincinnati have a duty to indemnify GM&P. *See U.S. Fire Ins. Co. v. Hayden Bonded Storage Co.*, 930 So. 2d 686, 691 (4th Fla. DCA 2006) (explaining that "the duty to indemnify is narrower" than the duty to defend and is based on the actual merits of the claims against the insured, instead of the allegations in the complaint).

Our interpretation of the Policy aligns with the Florida Supreme Court's decision in *Garcia*. There, the state court answered "yes" to our certified question, which asked: "Does an insurance policy providing coverage for an additional insured 'with respect to liability because of acts or omissions' of the named insured limit coverage to instances in which the additional insured is vicariously liable for acts of the named insured?" 969 So. 2d at 289. The court explained that the policy's causal language "clearly indicate[s] that an additional insured is only entitled to coverage concerning liability that is caused by or occurs by reason of acts or omissions of the named insured." *Id.* at 292 (emphases omitted). The court thus concluded that the insurance company did not owe coverage to an additional insured in *Garcia* because the plaintiff in the underlying lawsuit had sued the additional insured "for her own negligence," and "did not allege that [the additional insured] was liable for [the named insured's] acts or omissions." *Id.* Applying *Garcia's* logic to this case, the allegations in the complaint make clear that Cincinnati does not owe GM&P a duty to defend in the Underlying Action because GM&P is being sued for its own negligence, not vicariously for any negligent acts or omissions on the part of KNS.

GM&P argues that, because the language "caused by" or "because of" would require an allegation of vicarious negligence in the complaint, per the reasoning in *Garcia*, reading "caused, in whole or in part, by" to similarly require vicarious negligence would render the term "in part by" mere surplusage. We disagree. There is a clear difference between "caused" and "caused in part

by": the latter term means that even if the complaint alleged KNS was only 1% responsible for causing the faulty workmanship, then Cincinnati would have a duty to defend GM&P.[1]

Accordingly, we affirm the district court's conclusion that the Policy does not require Cincinnati to defend GM&P.

## IV.

We also affirm the district court's declaration that Cincinnati must defend KNS in the Underlying Action. As we've explained, "[a]ll doubts as to whether a duty to defend exists in a particular case must be resolved against the insurer and in favor of the insured," so an insurer is "required to offer a defense in the underlying action unless it [is] certain that there [is] no coverage for the damages sought by the [insured party] in the action." *Carithers v. Mid-Continent Cas. Co.*, 782 F.3d 1240, 1246 (11th Cir. 2015); *see also Klaesen Bros. v. Harbor Ins. Co.*, 410 So. 2d 611, 613 (4th Fla. DCA 1982) (holding that an insurer has a duty to defend if a "complaint alleges (at least marginally and by reasonable implication)" facts that would lead to coverage). Since the exclusions to property damage coverage do not clearly apply, this standard is met here.

First, "property damage" -- defined as "[p]hysical injury to tangible property, including all resulting use of that property" -- is

---

[1] To the extent the parties dispute the meaning of the phrase "caused, in whole or in part by," this simple, straightforward language is unambiguous. *See, e.g., Amerisure Ins. Co. v. Seneca Specialty Ins. Co.*, No. 10-20442-Civ, 2020 WL 3317035, at \*4 (S.D. Fla. June 18, 2020).

properly alleged to have occurred under the Policy. The complaint in the Underlying Action alleges that the "Glass Façade supplied and installed by" GM&P and other entities, including Tutor Perini and C.I. Energia Solar S.A.S. E.S. Windows ("CI Energia") "is fraught with systemic defects, including loose gaskets between window panels, damaged sealants and panel frames, and misaligned window wall panels creating the risk of property damage." In turn, GM&P's third-party complaint, says that, if proven, the alleged property damage was the fault of KNS and/or its agents.

Cincinnati relies on Florida law to argue that the Policy's "property damage" coverage does not cover damage caused only by faulty workmanship. Indeed, Florida courts have held that the term "property damage" in standard commercial liability insurance policies does not cover an insured's use of defective components or defective installation of components. *Auto-Owners Ins. Co. v. Pozzi Window Co.*, 984 So. 2d 1241, 1248 (Fla. 2008). Instead, for actionable property damage, an insured must have damaged *another* independent component of the property. *Id.* So, the Florida Supreme Court has explained that an allegation that a subcontractor "installed the windows defectively" would not suffice as property damage, but "[b]ecause the alleged defective installation resulted in water penetration causing further damage," sufficient property damage was alleged. *U.S. Fire Ins. Co. v. J.S.U.B., Inc.*, 979 So. 2d 871, 890 (Fla. 2007).

Our decision in *Carithers* -- which held that an insurer owed coverage stemming from "the negligent application of exterior

brick coating" that had "caused property damage to the brick" of a house -- controls here. 782 F.3d at 1249–50. Applying *J.S.U.B.*, our Court reasoned that no property damage would have occurred if the brick coating was negligently applied by the same subcontractor who installed the bricks, but "if the bricks were installed by one sub-contractor, and a different sub-contractor applied the brick coating, then the damage to the bricks caused by the negligent application of the brick coating was not part of the sub-contractor's defective work, and constituted property damage." *Id.* at 1250.

Just as in *Carithers*, the complaint in the Underlying Action alleges that one defendant (CI Energia) "supplied the glass panels" installed by another defendant (GM&P), which suggests that GM&P's faulty installation could have damaged a separate component of the property -- CI Energia's panels. Thus, when the pleadings are read favorably to the insured, they reasonably could lead to coverage.

We are not persuaded by Cincinnati's argument that certain exclusions apply. For starters, Cincinnati waived its arguments about exclusion *l*, which concerns property damage to the named insured's work "arising out of it or any part of it and included in the 'products-completed operations hazard.'" *See Walker v. Jones*, 10 F.3d 1569, 1572 (11th Cir. 1994) (quotations omitted) ("[A]n issue not raised in the district court and raised for the first time in an appeal will not be considered by this [C]ourt.").

Considering the next proposed exclusions, we stress that Cincinnati bears the heavy burden of showing "that the allegations

of the complaint are cast solely and entirely within the policy exclusion and are subject to *no other reasonable interpretation*." *Castillo v. State Farm Fla. Ins. Co.*, 971 So. 2d 820, 824 (Fla. 3d DCA 2007) (emphasis added and quotations omitted). As for exclusions j(5) and j(6), they exclude coverage for "property damage" to:

> (5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

> (6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Exclusions j(5) and j(6), which Florida courts regularly evaluate together, cover the pieces of real property "the contractor's operations were intended to include." *Wilshire Ins. Co. v. Birch Crest Apartments, Inc.*, 69 So. 3d 975, 976 (4th Fla. DCA 2011). So, for example, when a contractor damaged part of a customer's pool while draining the entire pool, a Florida appeals court held that the damage to the pool was excluded from coverage. *Am. Equity Ins. Co. v. Van Ginhoven*, 788 So. 2d 388, 391 (5th Fla. DCA 2001). "Conversely," the court explained, "damage to any property that [the contractor] was not performing operations on, or incorrectly performing work on," such as "the plumbing, electrical, deck work, patio, screen enclosure or the residence," would not fit within the exclusion. *Id.* By the same token, another Florida appeals court held that exclusions j(5) and j(6) did not apply when a contractor

cutting trees trimmed some trees on a neighboring property, because those were not in the contractor's intended scope of work. *Nova Cas. Co. v. Willis*, 39 So. 3d 434, 436–437 (3d Fla. DCA 2010).

At this stage of the proceedings, it is not clear whether the damage allegedly attributable to KNS in the Underlying Action would have been within the "natural and intended scope" of its operations on the property. *See Wilshire*, 69 So. 3d at 976. More specifically, it is unclear whether KNS allegedly damaged only the exterior of the glass façade or whether it caused other damage, or whether a different contractor or subcontractor's work was involved. Therefore, Cincinnati did not meet its burden of showing that exclusions j(5) and j(6) remove its duty to defend KNS in the Underlying Action.

As for the Policy's breach-of-contract exclusion, Cincinnati argues that it precludes coverage for GM&P's claims because they all arise from the allegedly defective work KNS performed pursuant to its contract. But the Policy does not exclude any and all tort claims related to KNS's breach of contract. The breach-of-contract exclusion reads:

> This insurance does not apply to any claim for "bodily injury" or "property damage" arising directly from or indirectly from breach of express or implied contract, including breach of an implied in law or implied in fact contract. This exclusion does not apply to liability for damages that an insured would have in the absence of the contract.

Cincinnati says that GM&P's claims against KNS -- for negligence, common law indemnification, and contribution -- all fall within this exclusion because they "stem from the fact that KNS contracted to perform the scope of work set forth in its contract with GM&P."

To begin with, Cincinnati has a duty to defend this whole suit if *any* claims fall within its scope of coverage. *Irvine v. Prudential Prop. & Cas. Ins. Co.*, 630 So. 2d 579, 580 (Fla. 3d DCA. 1993) ("Where some allegations set out in the complaint require the insurer to defend the insured and some allegations do not, the insurer must provide a defense on the entire suit."); *see also Stevens v. Horne*, 325 So. 2d 459, 461 (Fla. 4th DCA 1975). Further, if any of GM&P's claims against KNS could have been brought in the absence of a contract between the parties, that claim would not fall within the breach-of-contract exclusion. The exclusion expressly "does not apply to liability for damages that an insured would have in the absence of the contract," and, under Florida law, when a "claim sounds in tort," the claim is "based on a duty independent of any contractual obligation or duty, . . . [thus,] the breach of contract exclusion cannot apply." *Carolina Cas. Ins. Co. v. Spicer*, 323 So. 3d 350, 352, 354 (1st Fla. DCA 2021).

GM&P's third-party complaint alleged that KNS had:

a duty of care to ensure that the design and construction of Maryland Live were free from defective conditions, code violations, in conformance with the applicable plans and/or specifications, in conformance with industry and sound engineering and

> construction standards, constructed with appropriate and non-faulty materials, and constructed in a work-manlike manner.

And it alleges KNS breached that duty. At least one of GM&P's claims -- its claim that KNS was negligent -- sounds in tort, so this exclusion does not apply.

In short, because PPE's complaint in the Underlying Action includes allegations that plausibly fit within the Policy's definition of "property damage," and plausibly are not captured by the Policy's exclusions, Cincinnati has a duty to defend KNS in the Underlying Action. However, since the duty to indemnify is a narrower inquiry that involves delving into the *merits* of PPE's claims -- rather than just the *allegations* in PPE's complaint -- we agree with the district court's assessment that it is still premature to rule on Cincinnati's duty to indemnify KNS for any damages that it might be liable for in the Underlying Action.

**AFFIRMED.**